In re Adina M. SAUER, Debtor.

Myron N. Terlecky, Chapter
7 Trustee, Plaintiff,

v.

Chase Home Finance, LLC, Defendant.

Bankruptcy No. 08–52152.
Adversary No. 08–2178.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Sept. 25, 2009.

James A. Coutinho, for Plaintiff.

Holly N. Wolf, Columbus, OH, for Defendant.

Amelia A. Bower, Columbus, OH, for Defendant.

Adina M. Sauer, Westerville, OH, Debtor.

Thomas C. Lonn, Westerville, OH, for Debtor.

### MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, Bankruptcy Judge.

## I. Introduction

On March 13, 2008 ("Petition Date"), Adina M. Sauer ("Adina" or "Debtor")

filed a voluntary Chapter 7 petition. Prior to the Petition Date, Adina and her husband, Jason M. Sauer ("Jason"), executed a mortgage that included a certificate of acknowledgment clause signed by a notary public. The certificate, however, is blank in the place where the persons acknowledging the signing of the mortgage—Adina and Jason—should have been identified. Contending that the blank in the certificate renders the mortgage defective under Ohio Revised Code § 5301.01, and thus not capable of being recorded, the Chapter 7 trustee, Myron N. Terlecky ("Trustee" or "Plaintiff"), seeks to avoid the entire mortgage, preserve it for the benefit of the estate and disallow the claim of Chase Home Finance, LLC ("Chase" or "Defendant"). Chase disputes that the mortgage is invalid, arguing that the Court should determine that the acknowledgment was proper based on the affidavit of the notary public that she acknowledged the signing. For the reasons explained below, the Court concludes that the mortgage is invalid because the certificate of acknowledgment does not reflect that the notary public properly certified Adina's acknowledgment. Accordingly, the Court grants summary judgment in favor of the Trustee on his cause of action to avoid the mortgage on the Debtor's one-half interest in the property and to preserve that mortgage for the benefit of the Debtor's estate. The Court also concludes that any claim held by Chase against the Debtor is unsecured. The Trustee, however, has not provided any basis for avoidance of the mortgage on the one-half interest held Jason, a non-debtor, and has not provided any basis for disallowance of any claim held by Chase.

## II. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. The adversary proceeding is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(K).

## III. Procedural and Factual Background

By the complaint ("Complaint"), the Trustee seeks a determination of the extent and validity of Chase's lien as a secured claim under 11 U.S.C. § 506(d) (Count I). He also seeks to avoid the mortgage pursuant to § 544(a)(3) (Count II), preserve the mortgage for the benefit of the Debtor's bankruptcy estate under § 551 (Count III) and disallow any claim Chase asserts under § 502 (Count IV). Following a pretrial conference, the parties agreed to a determination of the issues by dispositive motion. The matter is now before the Court on: (1) the Trustee's motion for summary judgment ("Motion") (Doc. 11); (2) Chase's brief in opposition ("Opp'n Br.") (Doc. 18); (3) the Affidavit of Kim A. Curtis in support thereof ("Curtis Affidavit") (Doc. 19); and (4) the Trustee's reply to Chase's opposition brief ("Reply") (Doc. 20).

The parties did not file a stipulation of facts, but the pleadings and the documents filed in the Debtor's bankruptcy case establish that the relevant facts are not in dispute. Adina is the owner of an undivided one-half interest in real property located at 4344 Valley Quail Boulevard South, Westerville, Ohio ("Property"). Jason—Adina's non-filing spouse—owns the other undivided one-half interest in the Property. Jason and Adina received the Property by way of a general warranty deed signed April 27, 2000 and recorded on May 4, 2000 as Instrument Number 200005040088167, in the Franklin County, Ohio Recorder's Office. *See* Complaint, Ex. A.

On or about October 18, 2002, Adina and Jason executed a mortgage encumbering

the Property ("Mortgage") in favor of Wachovia Mortgage Corporation ("Wachovia"). The Mortgage was recorded on October 23, 2002 as Instrument No. 200210230268122 in the Franklin County, Ohio Recorder's Office. *See* Complaint, Ex. B. Page 14 of the Mortgage bears the signatures of Jason and Adina as the borrowers. Each page of the Mortgage—except for page 14—includes the initials of Jason and Adina. The Mortgage contains the following certificate of acknowledgment on page 15 ("Certificate of Acknowledgment"):

STATE OF OHIO, *Franklin* County ss:

This instrument was acknowledged before me this *18th* of *October* by

My Commission Expires: *Kim Curtis*
 Notary Public

The text reproduced above in italics was handwritten; the remainder was printed in one or more typefaces. Kim Curtis ("Ms. Curtis") subscribed her name to the Certificate of Acknowledgment as notary public. The Certificate of Acknowledgment bears two additional items—the notary public seal and notarial stamp of Ms. Curtis—that are not reproduced above. *See id.*

On or about April 10, 2008, Wachovia assigned its interest in the Mortgage to Chase through a written assignment ("Assignment"). The Assignment was recorded on April 14, 2008 as Instrument No. 200804140056794 in the Franklin County, Ohio Recorder's office. *See* Complaint, Ex. C.

## IV. Arguments of the Parties

In support of his request for a judgment avoiding the Mortgage, the Trustee makes a three-pronged argument: (1) the omission of Adina's name from the Certificate of Acknowledgment rendered the Mortgage defectively executed under Ohio law; (2) being defectively executed, the Mortgage was not entitled to be recorded and did not, despite its recording, put the Trustee on constructive notice of Chase's interest in the Property; and (3) as a hypothetical bona fide purchaser of the Property who is not charged with actual knowledge of Chase's interest, the Trustee may avoid the Mortgage under § 544(a)(3). In support of his position, the Trustee relies on prior opinions of this Court and other courts within this district and circuit, including decisions issued by the United States Court of Appeals for the Sixth Circuit in *Simon v. Chase Manhattan Bank (In re Zaptocky),* 250 F.3d 1020, 1028 (6th Cir.2001), and the Sixth Circuit Bankruptcy Appellate Panel ("BAP") in *Geygan v. World Savs. Bank, FSB (In re Nolan),* 383 B.R. 391, 396 (6th Cir. BAP 2008). *See* Motion at 5–9.

In its response, Chase concedes that the decisions cited by the Trustee support—and, in the case of the Sixth Circuit and BAP decisions, compel—the avoidance of the Mortgage. *See* Opp'n Br. at 4 ("Again, the plethora of cases that uphold the [T]rustee's powers as a *bona fide* purchaser are well established."). *See also id.* at 5–6 ("If we follow prior cases including [*Nolan,* 383 B.R. at 396], the answer is that the [T]rustee is entitled to legally ignore the [M]ortgage ...."). Chase, however, asks the Court to disregard this line of authority for two reasons. First, citing *Citizens Nat'l Bank in Zanesville v. Denison,* 165 Ohio St. 89, 133 N.E.2d 329

(1956)[1] and *Logan v. CIT Group/Consumer Fin. Inc. (In re Cooperman)*, Adv. Pro. No. 06–2353, Doc. 58 (Bankr.S.D.Ohio Sept. 18, 2008), Chase contends that Ohio law permits the Court to look to extrinsic evidence—here, the Curtis Affidavit—to determine that the Mortgage was, despite its facial deficiency, in substantial compliance with the mortgage-execution requirements. *See id.* at 1–4. Second, relying on *Argent Mortgage Co. v. Drown (In re Bunn)*, 2008 WL 4449551 (S.D.Ohio Sept. 30, 2008), *aff'd*, 578 F.3d 487 (6th Cir.2009), Chase argues that, even though the Mortgage was not entitled to be recorded, its actual recording—as well as the recording of a subordination agreement that references the Mortgage ("Subordination Agreement")—put the Trustee on inquiry notice of Chase's interest. Chase contends that such notice is sufficient to defeat the Trustee's status as a hypothetical bona fide purchaser. *See id.* at 4–7. In conclusion, Chase "invite[s] this Court to revisit the acknowledgment cases and consider whether some limitation on the breadth of the [T]rustee's [§ ] 544 powers is appropriate." *Id.* at 7.

In the Reply, the Trustee begins by reiterating the well-established case law holding that a certificate of acknowledgment is defective if it omits the name of the mortgagor whose signature is being acknowledged. *See* Reply at 2, 4–5. The Trustee then proceeds to counter Chase's arguments regarding the efficacy of both extrinsic evidence and inquiry notice to save the Mortgage from avoidance. First, the Trustee argues that, under *Dodd v. Bartholomew*, 44 Ohio St. 171, 5 N.E. 866 (1886), extrinsic evidence cannot be used to correct a facially defective mortgage; rather, any evidence used to show that a mortgage is in substantial compliance with the law must be found within the mortgage itself. *Id.* at 5–6. In this regard, the Trustee takes issue with Chase's reading of *Cooperman*, stating that "the decision [in *Cooperman* ] finding that the mortgage was valid was made because of corrective elements found within the mortgage itself" and that the court "did not find the means of correcting the defect from extrinsic evidence." *Id.* at 6–7. The Trustee also disputes Chase's interpretation of *Denison*, stating that "[a]t no time did the [*Denison* ] court announce a rule allowing for extrinsic evidence to substitute for the formalities of execution." *Id.* at 7. Thus, according to the Trustee, "[e]ven if the Notary's testimony six years after the fact were credible, the affidavit is not a part of the Mortgage and provides no means of making the correction." *Id.* at 8.

Second, the Trustee responds to Chase's inquiry-notice argument by describing it as "contrary to the Bankruptcy Code, which limits a Trustee's knowledge to con-

1. *Denison* remains good law despite having been superseded by statute at one time. As the United States District Court for the Southern District of Ohio has explained:

 The Court notes that one could question whether *Denison* is good law in Ohio. Westlaw's Key Cite indicates that *Denison* was superseded by Ohio Rev.Code § 5301.234. Section 5304.234, which was in effect in Ohio for about three years from 1999 to 2002, established a rebuttable presumption that any mortgage which was properly recorded was properly executed. This section also provided that the recording of a mortgage with defects in the witnessing or acknowledgment constituted constructive notice to bona fide purchasers. The Ohio General Assembly, however, repealed § 5301.234. Moreover, the Supreme Court of Ohio later ruled that § 5301.234 violated the Ohio constitution because its enactment was contrary to the one-subject rule. *In re Nowak*, 104 Ohio St.3d 466, 820 N.E.2d 335, 348 (2004). Therefore, the Court concludes that *Denison* is still good law in Ohio.

 *Field v. Wheeler (In re Wheeler)*, 2006 WL 1645214 at *3 n. 2 (S.D.Ohio June 12, 2006).

structive knowledge of the record." *Id.* The Trustee contends that neither the recording of the defective Mortgage nor any other act—other than the recording of a properly executed mortgage document—could have put the Trustee on constructive notice of Chase's interest in the Property. "Upon the filing of the bankruptcy petition, the Trustee [became] a *bona fide* purchaser without regard to his actual knowledge of the record [and,] [b]ecause it was improperly executed, the Mortgage does not put a subsequent bona fide purchaser on constructive notice." *Id.* (internal quotation marks omitted) (citing *Zaptocky*, 250 F.3d at 1027). "Each of the prior cases that [has] examined the sufficiency of acknowledgement clauses has found that a defective mortgage does not place a trustee on notice of the encumbrance." *Id.* at 10.[2] The Trustee contends that Chase's reliance on *Bunn* is misplaced because that decision "does not deal with the faulty execution of a mortgage, but rather addresses the failure of the mortgage company to include a legal description on a mortgage." *Id.* at 9. Finally, the Trustee argues that the Subordination Agreement does not provide sufficient information to put the Trustee on notice of the Mortgage and that, in any event, the Court need not consider the Subordination Agreement because it has not been properly authenticated. *See id.* at 9–10.

## V. Legal Analysis

### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), made applicable in this adversary proceeding by Fed. R. Bankr.P. 7056, summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577 (6th Cir.2007). In reviewing a motion for summary judgment, the Court views the evidence, all facts, and any inferences drawn therefrom, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Novak*, 503 F.3d at 577; *Skowronek v. Am. S.S. Co.*, 505 F.3d 482, 484 (6th Cir.2007) (the court "must draw all reasonable inferences in favor of the nonmoving party").

" '[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.' " *Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1304 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Novak*, 503 F.3d at 577 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Ransier v. Standard Fed. Bank (In re Collins)*, 292 B.R. 842, 845 (Bankr. S.D.Ohio 2003).

Whether a certificate of acknowledgment complies with Ohio Revised Code

**2.** Like the Ohio Revised Code, the parties sometimes use the spelling *acknowledgment* and at other times the variant spelling *acknowledgement*. Both are correct, although *acknowledgment* is more commonly used in American English. In this opinion, the Court will use the spelling used in the original when quoting a source, but otherwise will use *acknowledgment*.

§ 5301.01 is a question of law. *See Drown v. GreenPoint Mortgage Funding, Inc. (In re Leahy)*, 376 B.R. 826, 828 (Bankr. S.D.Ohio 2007). Accordingly, this adversary proceeding is ripe for summary judgment.

## B. Count I: Section 506(d)

The Trustee seeks summary judgment on his request in Count I of the Complaint for a determination under § 506(d) as to whether "any claimed lien of Defendant may be allowed as a secured claim." Complaint ¶ 18. The Trustee's position appears to be that, because Chase will not have a lien against the Property if the Mortgage is avoided, Chase should not be granted a secured claim against the Debtor. The Court agrees. As explained below in part V.D. of this opinion (in connection with the discussion of Count IV of the Complaint), the Trustee is entitled to a judgment as a matter of law determining that (1) the Mortgage is avoidable and (2) Chase is the holder of an unsecured, rather than a secured, claim.

█ Because he is entitled to avoid the Mortgage, it makes sense for the Trustee to seek a determination of the status of Chase's claim based on the status of the lien securing the claim. But the Trustee's reference to § 506(d) is confounding. Section 506(d) provides as follows:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
>
> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
>
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d). As the Supreme Court explained in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), subject to certain exceptions, § 506(d) voids a lien if the underlying claim is disallowed. Here, though, the Trustee provides no basis for disallowing any claim held by Chase. Rather, he asserts a basis for avoiding the Mortgage and, if he is successful, reclassifying Chase's claim as unsecured. Reclassification of the claim, however, would result from avoidance itself, not from the operation of § 506(d). The Trustee's reliance on § 506(d), then, is misplaced. Because § 506(d) permits lien avoidance, but does not govern claim reclassification, allowance or disallowance, it does not provide the remedy sought by the Trustee. Count I, therefore, is **DISMISSED.**

## C. Count II: Defective Acknowledgment Clause

The Trustee asserts that, because the Certificate of Acknowledgment is blank and does not reflect that Adina appeared before the notary public as required by Ohio Revised Code § 5301.01, the Mortgage is invalid, unperfected and avoidable under the "strong-arm" powers granted to him by 11 U.S.C. § 544. He also seeks to preserve the avoided transfer for the benefit of the estate pursuant to 11 U.S.C. § 551.

Section 544(a)(3) states:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> . . .

(3) a bona fide purchaser of real property ....

11 U.S.C. § 544(a)(3).

■ The Court must look to state law to determine whether the Mortgage is valid. *See Kildow v. EMC Mortgage Corp. (In re Kildow)*, 232 B.R. 686, 693 (Bankr. S.D.Ohio 1999) (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). In Ohio, "[o]nly properly executed mortgages take priority over a bona fide purchaser ...." *Kovacs v. First Union Home Equity Bank (In re Huffman)*, 408 F.3d 290, 293 (6th Cir. 2005); *see also Helbling v. Mortgage Elec. Registration Sys., Inc. (In re Cala)*, 2008 WL 2001761 at *3 (Bankr.N.D.Ohio May 6, 2008) ("Ohio law provides that 'an improperly executed mortgage does not put a subsequent bona fide purchaser on constructive notice.'" (quoting *Zaptocky*, 250 F.3d at 1028)).

■ Section 5301.01 establishes the requirements for a properly executed mortgage and provides, in relevant part, as follows:

> A deed, mortgage, land contract ... or lease of any interest in real property and a memorandum of trust ... shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of acknowledgement.

Ohio Rev.Code Ann. § 5301.01(A) (West 2009). Thus, in order to comply with the statute, (1) the Mortgage "must be signed by the mortgagor; (2) the signing of the [M]ortgage must be acknowledged [by the mortgagor] before a notary public; (3) the notary public must certify th[e] acknowledgment; and (4) the notary public must subscribe his name to the certificate of acknowledgment." *Leahy*, 376 B.R. at 832. *See also Geygan v. Chase Manhattan Mortgage Corp. (In re Thomas)*, 2008 Bankr.LEXIS 1679 at *7–8 (Bankr. S.D.Ohio May 29, 2008) ("In Ohio, the grantor of a mortgage must sign the mortgage and acknowledge the signing. Additionally, the acknowledgment must be certified by a notary or a specified public official." (citation omitted)).

■ In addition to the requirements of § 5301.01, the Court must also apply Ohio Revised Code §§ 147.53, 147.54 and 147.55, which "clearly require some identification of the person whose signature is being acknowledged." *Nolan*, 383 B.R. at 396 (internal quotation marks omitted). Section 147.53 provides:

> The person taking an acknowledgment shall certify that:
>
> (A) The person acknowledging appeared before him and acknowledged he executed the instrument;
>
> (B) The person acknowledging was known to the person taking the acknowledgment, or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.

Ohio Rev.Code Ann. § 147.53 (West 2009). *See Terlecky v. Countrywide Home Loans, Inc. (In re Baruch)*, 2009 Bankr.LEXIS 608 at *21–22 (Bankr.S.D.Ohio Feb. 23, 2009) ("[T]he Acknowledgment Clause must identify the 'person acknowledging' the acknowledgment.... An acknowledgment clause containing nothing relative to the mortgagor's identity is insufficient;

rather, an acknowledgment clause must either identify the mortgagor by name or contain information that permits the mortgagor to be identified by reference to the mortgage. . . . [The Acknowledgment Clause here] does not indicate that *anyone* acknowledged the execution of the Mortgage." (footnote omitted)). In addition, the Ohio Revised Code provides an acceptable form certificate of acknowledgment. This form clearly contemplates that the notarial certification is to include the name of the person acknowledging the document.

The forms of acknowledgment set forth in this section may be used and are sufficient for their respective purposes under any section of the [Ohio] Revised Code. . . . The authorization of the forms in this section does not preclude the use of other forms.

(A) "For an individual acting in his own right:

State of _____

County _____ of

_____

The foregoing instrument was acknowledged before me this (date) by (name of person acknowledged.)

(Signature of person taking acknowledgment) (Title or rank) (Serial number, if any)"

Ohio Rev.Code Ann. § 147.55(A) (emphasis added). Based on this statutory framework as well as decisions of the Ohio Supreme Court, bankruptcy courts consistently have concluded that, when a certificate of acknowledgment does not recite the name of the mortgagor—or at least reference the mortgagor in some way that ties to the four corners of the mortgage— "the acknowledgment is defective . . . ." *Nolan*, 383 B.R. at 396. *See also Smith's Lessee v. Hunt*, 13 Ohio 260, 269 (1844) (holding that court was unable to infer name of grantor when acknowledgment

was blank as to the grantor and, thus, the mortgage was defective); *Cala*, 2008 WL 2001761 at *6 ("In order to properly certify an acknowledgment, the notary must provide some indication that the party actually appeared.").

The certificate of acknowledgment in the Mortgage tracks the language of the suggested form set forth in § 147.55(A). The acknowledgment clause also meets the first and fourth requirements in § 5301.01—there is no dispute that Adina signed the Mortgage and that Ms. Curtis subscribed her name as a notary public to the Mortgage. A question remains, however, as to whether the acknowledgment satisfies the second and third prongs of § 5301.01. The Court must determine whether the signing was acknowledged before a notary public and whether the notary public certified the acknowledgment. To the extent a mortgage fails to meet one of these requirements, the document is invalid unless the notarial certification substantially complies with § 5301.01. *See Thomas*, 2008 Bankr.LEXIS 1679 at *15 ("Acknowledgment and certification are two separate requirements under § 5301.01."); *Cala*, 2008 WL 2001761 at *6 (Section 5301.01 "and the Ohio Supreme Court case law interpreting it require two separate acts—(1) the mortgagor signing the document in the presence of a notary or telling the notary that the signature is indeed his; and (2) the notary certifying that acknowledgment—and fulfilling one act alone is not sufficient.").

## 1. The Certificate of Acknowledgment is Defective.

*Smith's Lessee*—a venerable Ohio Supreme Court opinion—provides guidance in determining whether the Certificate of Acknowledgment is defective. There, Ezekiel Folsom delivered a mortgage deed to Smith, the lessor of the plaintiff ("Smith's

Lessee"). The certificate of acknowledgment, dated February 21, 1835, was set forth as follows: "Personally appeared ————————————, who acknowledged that he did sign and seal the foregoing instrument, and that the same is his free act and deed. WM BURTON, *Justice of the Peace.*" *Smith's Lessee,* 13 Ohio at 260. Mr. Burton also was a witness to the mortgage. *Id.* at 262 ("see the name of William Burton, as a witness, and see his signature to the acknowledgment"). Subsequently, Mr. Folsom conveyed the same property to Ambrose Anthony who later conveyed the land to defendant John E. Hunt. In 1840, Smith's Lessee filed a bill of equity against Mr. Folsom to sell the property and satisfy the mortgage. Smith's Lessee was the purchaser of the property at a judicial sale. *See id.* at 260. At issue was whether Smith's Lessee held any legal title to the property after the sale given the purportedly defective certificate of acknowledgment in the February 21, 1835 conveyance. *See id.* at 268. The Ohio Supreme Court evaluated the certificate of acknowledgment to determine if it complied with the requirement that "such acknowledgment [must] be certified by the magistrate or person before whom it is made." *Id.* The Court asked whether Mr. Folsom and the "blank" were "synonymous." *Id.* Based on the evidence presented, the Court could not infer that Mr. Folsom was in fact the grantor and held that there was "no legal estate … conveyed by this defectively executed mortgage …." *Id.* at 269.

■ The parties here do not dispute that Ms. Curtis signed the Mortgage as the notary public. But she failed to recite the names of the acknowledging parties in the acknowledgment clause. Thus, the problem lies with Ms. Curtis's faulty certification—caused by her failure to identify Adina in the notarial acknowledgment.

And based on *Smith's Lessee,* this omission renders the Mortgage defective and thus invalid as against third parties, such as a subsequent bona fide purchaser.

### 2. The Mortgage Does Not Substantially Comply with § 5301.01 and is Invalid.

■ Despite a defect in an acknowledgment clause itself, it may otherwise substantially comply with § 5301.01 and thus be deemed valid if the mortgage supplies the means to correct the defect. In *Dodd,* the Ohio Supreme Court was asked to determine whether a certificate of acknowledgment that contained scrivener's errors was fatally deficient so as to render the mortgage invalid. The Court enunciated the following principle of construction:

> It is a well-settled principle, applicable to the construction of deeds and other instruments, that all their parts are to be construed together, and the meaning ascertained from a consideration of each and every part; and, in the application of this rule, it is uniformly held that a false description, whether of the subject-matter or of the parties, does not vitiate the instrument, where the error appears upon its face, *and the instrument supplies within itself the means of making the correction.*

*Dodd,* 5 N.E. at 867 (emphasis added). *See also Menninger v. First Franklin Fin. Corp. (In re Fryman),* 314 B.R. 137, 138 (Bankr.S.D.Ohio 2004) ("[T]he court must review the nature of the error and the balance of the document to determine whether or not the 'instrument supplies within itself the means of making the correction.'" (quoting *Dodd,* 5 N.E. at 867)).

In *Leahy,* this Court held that where the mortgagor's name was omitted from the acknowledgment clause the mortgage failed to supply the means necessary to

correct a deficiency and thus did not substantially comply with § 5301.01.

> [T]he acknowledgment clause at issue is problematic for [numerous] reasons. First, the clause leaves blank the name of the person who appeared before the notary. Second, the clause references "the person(s)" with no striking out of the (s) to indicate that the person who signed was a single individual. In other words, the word "person" with the (s) after it can lead to the conclusion that it referred to plural persons, not simply a singular individual.... And, finally, the clause states that "he/she/they executed" the instrument without circling or otherwise designating the appropriate pronoun.

*Leahy*, 376 B.R. at 828–29. Similarly, in *Field v. ABN AMRO Mortgage Group, Inc. (In re Wheeler)*, 2005 WL 4057841 at *3 (Bankr.S.D.Ohio July 21, 2005), *aff'd*, 2006 WL 1645214 (S.D.Ohio June 12, 2006), the bankruptcy court concluded that the mortgage did not substantially comply with § 5301.01 because "there [was] no language contained within the defendant's acknowledgment clause that indicate[d] that the notary acknowledged the signature of anyone other than the non-debtor spouse ...." The mortgage also did not include any evidence that the debtor was a part of the loan transaction. *See id. See also Thomas*, 2008 Bankr.LEXIS 1679 at *13 ("If a certificate of acknowledgment omits the name of one or more grantors, it is clear that the mortgage was defectively executed as to the omitted grantors unless the certificate contains additional identifying language such as 'the grantors in the above-named instrument.'").

▮ The Court concludes that the Certificate of Acknowledgment is deficient for several reasons. First, the Certificate of Acknowledgment leaves blank the name of the person or persons who appeared before the notary public. Based on *Nolan* and *Smith's Lessee*, this fact alone renders the Mortgage invalid. Although it appears that Adina and Jason initialed each page of the Mortgage (other than the page on which they placed their signatures), courts in this district consistently have held that such initials do not cause the mortgage to be in substantial compliance with § 5301. In *Drown v. EverHome Mortgage Co. (In re Andrews)*, 404 B.R. 275, 279 (Bankr. S.D.Ohio 2008), the court concluded that, even though the debtor had signed the signature block and initialed each page of the document, the mortgage "contain[ed] no indicia that [the debtor] acknowledged the instrument before the notary." Also, in *Cala*, where both mortgagors initialed the page that included the certificate of acknowledgment, the court reached a similar conclusion. The court, "[v]iewing the initials in the light most favorable to [the mortgagee,]" concluded that because "the initials [we]re separate from the acknowledgment"—appearing at the bottom of the acknowledgment page—that excluded one of the mortgagor's names, the mortgage did not satisfy § 5301.01. *Cala*, 2008 WL 2001761 at *6. *See also Baruch*, 2009 Bankr.LEXIS 608 at *22–23 ("Similarly, the Debtor's initialing the Mortgage on the bottom of its other pages, including the page on which the Acknowledgment Clause appears, is insufficient because the initials, like the Debtor's printed name and signature, were not made part of the Acknowledgment Clause."). The Court likewise concludes that, although Adina placed her initials at the bottom of the page on which the Certificate of Acknowledgment appears, this fact alone is not sufficient to bring the Mortgage into substantial compliance with § 5301.01.

The blank acknowledgment clause does not designate whether an individual or more than one person acknowledged the Mortgage. The Mortgage was executed

by two people—Adina and Jason. Unfortunately, because the certification is blank, the Court would be speculating if it were to determine that the notary public acknowledged Adina's signature, Jason's signature or both of their signatures. So it is simply not clear—from a review of the four corners of the document—whether the notary public certified the acknowledgment by Adina or Jason or both.

Based on all these factors, the Court concludes that Ms. Curtis did not properly certify Adina's acknowledgment of the Mortgage, and the instrument does not supply the means for correcting the deficient certification. Thus, the Court finds that the Mortgage does not substantially comply with the requirements in § 5301.01. Because the Mortgage was improperly executed, it does not "take priority over [the Trustee, who has the rights of] a bona fide purchaser ...." *Kovacs*, 408 F.3d at 293.

### 3. Evidence Extrinsic to the Mortgage Cannot Establish the Validity of the Certificate of Acknowledgment.

Chase submits the Curtis Affidavit to establish that the Mortgage was properly executed. Ms. Curtis executed the affidavit on January 26, 2009—well over six years after she purportedly acknowledged Adina's and Jason's signatures on the Mortgage. In her affidavit, Ms. Curtis states that "[o]n October 18, 2002, Jason M. Sauer and Adina M. Sauer personally appeared before me in my capacity as a Notary Public, and did acknowledge the signing of a Mortgage to Wachovia Mortgage Corporation in the principal amount of $129,512.00 ...." Curtis Aff. at ¶ 3. Chase argues that the Curtis Affidavit saves the Mortgage from avoidance. As explained below, this argument is unavailing.

First, even if the Curtis Affidavit were competent evidence of the proper acknowledgment of Adina's signature on the Mortgage, the affidavit could not constitute a proper certification of such acknowledgment because the authority that Ms. Curtis had to certify the acknowledgment terminated as soon as the Mortgage was recorded. *See Logan v. WMC Mortgage Corp. (In re Gray)*, 410 B.R. 270, 276–77 (Bankr.S.D.Ohio 2009) ("[A]n attempt by a notary public or other public official to correct a certification of acknowledgment after the document on which it appears has been recorded is void absent re-acknowledgment by the grantor."). This is important because, as discussed above, acknowledgment and certification are separate requirements, both of which must be met.

Second, because the Curtis Affidavit is extrinsic to the Mortgage, it cannot be considered competent evidence of proper acknowledgment or certification under controlling Ohio law. As explained below, Chase's argument to the contrary is based on its incorrect reading of the Ohio Supreme Court's decision in *Denison* and dictum in the bankruptcy court's decision in *Cooperman*.

*Denison* warrants a more careful reading than the parties have given it. In *Denison*, a priority dispute arose among Citizens National Bank in Zanesville ("Bank"), Citizens Budget Company ("Budget") and Ernest Graham ("Graham"), all holders of mortgage liens granted by Bertha and Ralph Denison ("Denisons") on the same property. The Bank filed a foreclosure proceeding and sought to marshal the various mortgage liens on the property, naming the Denisons, Budget and Graham as defendants. Budget responded by asserting that its mortgage had priority over the others. Graham filed a cross-claim alleging that the Budget

mortgage was defectively executed. The Denisons filed an answer in which, among other things, they denied that the mortgage held by Budget was properly acknowledged. *Denison*, 133 N.E.2d at 330–31. The parties stipulated, and the trial court found, as follows:

> The two Denisons each separately signed an instrument intended by them as a mortgage deed against real estate then in the name of Mrs. Denison, in order to secure credit for Denison from the budget company. No misrepresentation was made nor fraud practiced upon either of them by the mortgagee in obtaining their separate signatures on said instrument. *The notary public did not actually witness the signing by Mrs. Denison of her name nor did she acknowledge her signature or signing to him either in person or otherwise then or afterwards.* Denison executed the instrument after he saw and recognized that it had been signed by his wife, delivered it to an actual witness of his and her signatures and thereafter acknowledged his signature over the telephone to the notary public who thereupon affixed his name both as witness and acknowledging officer. Neither the bank nor Graham was misled by the facts underlying the execution and acknowledgment of the mortgage deed.

*Id.* at 331. In other words, on its face, the Budget mortgage would have appeared to be valid, but the evidence showed that it in fact had been defectively executed. Despite the deficiencies, the trial court placed the Budget mortgage ahead of the liens held by Graham and ahead of a portion of the Bank's lien. The appeals court affirmed. *See id.* On appeal to the Ohio Supreme Court, the Bank and Graham argued that Budget's mortgage did not have priority over their mortgages due to the defective execution of the Budget mortgage. In response, Budget argued that "where the mortgage is apparently regular, with witnesses to the signatures and acknowledgment before a notary public, and is properly recorded, it can not be challenged by contradictory testimony of the parties and the notary public." *Id.* at 331. The Ohio Supreme Court rejected this argument and, in reversing the judgment of the appeals court, held in its syllabus as follows:

> Under the provisions of Section 5301.25, Revised Code, a defectively executed mortgage, although recorded, does not establish a lien with priority over a properly executed mortgage which is recorded subsequently; and the defective execution may be proved by evidence of defects which are not apparent on the face of the instrument.

*Id.* at 329.[3] In the text of its opinion, the Ohio Supreme Court explained its ruling as follows:

---

**3.** Prior to May 1, 2002, Ohio law provided that "[t]he syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication." Rule 1(B) of the Supreme Court of the Ohio Rules for the Reporting of Opinions (2001). Effective May 1, 2002, the Ohio Supreme Court amended Rule 1 to provide that "[t]he law stated in a Supreme Court opinion is contained within its syllabus (if one is provided), and its text, including footnotes[,]" and "[i]f there is disharmony between the syllabus of an opinion and its text or footnotes, the syllabus controls." Rule 1(B)(1) & (2) (West 2009). Under the amended rule, the law in an Ohio Supreme Court opinion may be stated in the body of the opinion. Even prior to the amendment, however, the Sixth Circuit had held that "[a]lthough the Ohio Supreme Court lays down the law through the syllabus, [a court] may look to the body of the opinion for explication of that syllabus law." *Hostetler v. Consol. Rail Corp.*, 123 F.3d 387, 391 (6th Cir.1997).

[A] defectively executed mortgage when recorded does not establish a lien with priority over subsequently recorded mortgages properly executed. This general rule is not confined only to instances in which on its face the instrument is ˙defective but is applicable also to other situations in which, by evidence, the defective condition of the conveyance is disclosed.

*Id.* at 333.

■■■■ Under *Denison,* therefore, the "general rule" is that, even if it is recorded, a defectively executed mortgage does not have priority over a subsequently recorded, properly executed mortgage. The general rule applies, as the word *general* implies, *generally.* First, it applies "to instances in which on its face the instrument is defective ...." *Id.* That is the situation in this adversary proceeding; the Mortgage is defective on its face. The general rule also applies when the mortgage is valid on its face but a defect can be shown by extrinsic evidence. *See id.* Under those circumstances, extrinsic evidence can be used to show that the mortgage was defectively executed even where, as in *Denison,* no fraud was involved in the execution of the mortgage. *See id.*

■■■ Chase seriously misreads *Denison* in at least two fundamental ways. First, Chase reads the ruling in *Denison* as predicated on fraud. *See* Opp'n Br. at 4 ("[*Denison* ] cannot be read to be so limited as to doom every defective acknowledgment because the Court specifically referenced fraud prevention as a condition of its's [sic] decision."). To the contrary, the *Denison* court made clear that its ruling was not based on fraud and that fraud was not present in that case. *See Denison,* 133 N.E.2d at 331 ("No misrepresentation was made nor fraud practiced upon [the Denisons] by the mortgagee in obtaining their separate signatures on said instru-

ment. ... Neither the bank nor Graham was misled by the facts underlying the execution and acknowledgment of the mortgage deed."). Chase's position seems to be that facially defective mortgages are fatally defective only if fraud was involved in their creation. This is contrary to *Denison,* in which the court expressly stated that one purpose of the statutory requirements relating to acknowledgment is to " 'afford[ ] proof of the due execution ... by the grantor, sufficient to authorize the register of deeds to record it.' " *Denison,* 133 N.E.2d at 332 (quoting 7 *Thompson on Real Property* (Perm. Ed.), 416). Under Ohio law, a certificate of acknowledgment that fails to identify the acknowledging mortgagor is not entitled to be recorded. *See Smith's Lessee,* 13 Ohio at 269. Chase's fraud-based interpretation of *Citizens* also is contrary to other decisions of the Ohio Supreme Court, including a decision relied on by the court in *Denison, Amick v. Woodworth,* 58 Ohio St. 86, 50 N.E. 437 (Ohio 1898), in which the Ohio Supreme Court held that "the real purpose of the law" imposing mortgage-execution requirements is not only to prevent fraud on the grantors, but also to "afford reasonable assurance to those who deal with or on the faith of such instruments that they are genuine and represent bona fide transactions." *Amick,* 50 N.E. at 440. Permitting a certificate of acknowledgment in which the mortgagor's name is missing to be validated by later extrinsic evidence would not accomplish the purpose of assuring subsequent parties of the bona-fide nature of the transaction.

Chase also misinterprets *Denison* by using it to establish the converse of the principle for which it stands: "In rendering it's [sic] decision, the court held that extrinsic evidence can be considered to demonstrate the fraud in the execution of recorded instruments. Turning the cir-

cumstances around, extrinsic evidence must, therefore, be permitted to prove the validity of a document, *Andrews* nothwithstanding [sic]." *Id.* at 3 (citation omitted). In effect, Chase posits that, if a court can consider extrinsic evidence to show that a mortgage was defectively executed, then a court should be permitted to consider extrinsic evidence to determine that a mortgage was properly executed. *Id.* at 3. Because this argument is a non sequitur, the Court rejects Chase's interpretation of *Denison*. Contrary to Chase's suggestion, the Court does not read *Denison* as establishing a rule that allows the use of extrinsic evidence to correct facially defective mortgage instruments.

Before the Court is a simple, straightforward question of whether the acknowledgment of the Debtor's signature was properly certified. It was not. Thus, there is no reason for the Court to consider extrinsic evidence or reconsider the longstanding rule that a defectively executed mortgage is not capable of being recorded. *See Logan v. Universal 1 Credit Union, Inc. (In re Bozman)*, 365 B.R. 824, 829 n. 5 (Bankr.S.D.Ohio 2007) ("An affidavit attached to a motion for summary judgment is not part of the Mortgage document and in this case was produced several years after the execution of the Mortgage. Thus, the statements in the affidavit in this case cannot provide the means of making the correction in the defective Mortgage."), *aff'd*, 2007 WL 4246279 (S.D.Ohio Nov. 28, 2007).

The Trustee correctly points out that, under *Dodd*, extrinsic evidence may not be used to correct a facially defective mortgage because the mortgage must "suppl[y] within itself the means of making the correction." *Dodd*, 5 N.E. at 867. Importantly, *Denison* did not even mention *Dodd*, let alone purport to overrule that decision. In addition, in each proceeding

in this district in which a court has been asked to allow the use of extrinsic evidence to correct a mortgage that is defectively executed on its face, the court has declined to do so. *See Bozman*, 2007 WL 4246279 at *3 ("There is no mortgage provision enabling what amounts to later amendment to create substantial compliance, which means that the lack of compliance cannot be corrected years later by an affidavit."); *Andrews*, 404 B.R. at 280 ("[T]he doctrine of substantial compliance mandates that the corrective language or the means of making the correction be found within the Mortgage document itself."); *Thomas*, 2008 Bankr.LEXIS 1679 at *14–15.

Against this case law Chase pits *Cooperman*, in which the bankruptcy court stated in dictum that "courts may consider other evidence, such as a notary's affidavit to substantiate that parties attended the closing and signed the mortgage in their presence." *Cooperman* at 5. In *Cooperman*, however, the court found substantial compliance based on evidence contained within the mortgage document itself—that there was an acknowledgment clause, that it reflected the notary public's stamp and expiration of her commission, and that it included the date of the transaction. In fact, the court expressly held that "these additional signs, *that appear on the Mortgage itself*" serve to cure the defect. *Id.* at 6 (emphasis added). According to the court, "[t]he curative factors *on the Mortgage* are only bolstered by the other documents that were executed during the closing . . . ." *Id.* (emphasis added). The court's ruling in *Cooperman*, therefore, was not necessarily predicated on evidence extrinsic to the mortgage. Although the court recited numerous factors that were not included within the mortgage document, it did not decide that the defects were cured based on the extrinsic evidence presented. Rather, the court found that the mortgage

itself provided the means for correcting the deficiency. The *Cooperman* court's statement regarding extrinsic evidence, therefore, was merely dictum.[4]

### 4. The Trustee is a Bona Fide Purchaser.

▌ Given the deficiency in the Certificate of Acknowledgment, the Mortgage was not properly executed. As stated in *Mortgage Electronic Registration Systems v. Odita*, 159 Ohio App.3d 1, 822 N.E.2d 821, 825 (2004), "[a] defectively executed mortgage is not entitled to record, and even if it is recorded, the defective mortgage is treated as though it has not been recorded." Only a mortgage that is properly executed takes priority over a bona fide purchaser, such as a trustee in bankruptcy. *See Huffman*, 408 F.3d at 293; *see also Logan v. Kingston Nat'l Bank (In re Floater Vehicle, Inc.)*, 105 B.R. 420, 421 (Bankr.S.D.Ohio 1989) (concluding that "a defectively-executed mortgage is not entitled to record and is not binding as to a trustee in bankruptcy in his capacity as a hypothetical lien creditor/bona fide purchaser"). And "an improperly executed mortgage does not put a subsequent bona fide purchaser on constructive notice." *Zaptocky*, 250 F.3d at 1028. *See also Bozman*, 2007 WL 4246279 at *4 ("The fact that the defective mortgage was recorded does not provide [the trustee] with constructive knowledge. . . . [T]he failure to include the certification of acknowledgment means that the mortgage

was not properly executed and was not entitled to be recorded, which means that the mortgage cannot serve to create constructive notice."); *Wheeler*, 2006 WL 1645214 at *4 ("[T]he mortgage at issue in this case is invalid under Ohio law because the notary public did not certify the acknowledgment of the Debtor's signature. Additionally, pursuant to *Denison*, the invalidly executed mortgage does not provide constructive notice to bona fide purchasers."); *Bozman*, 365 B.R. at 829–30 (finding that improperly executed mortgage did not put trustee as bona fide purchaser on constructive notice).

▌ Chase attempts to depart from this longstanding legal authority by arguing that the Trustee had inquiry notice sufficient to defeat his status as a hypothetical bona fide purchaser. In support of its position, Chase cites *Bunn*. The district court's decision in *Bunn*, however, addressed the failure of a mortgage to include a legal description of the mortgaged property, not the validity of a mortgage based on whether the mortgagor's signature was properly acknowledged and the acknowledgment certified by the notary public. Chase's argument based on *Bunn*, therefore, fails to carry the day. *See Baruch*, 2009 Bankr.LEXIS 608 at *27 n. 14 ("Because the Trustee is not contesting the description of the Property set forth in the Mortgage, Countrywide's reliance on [*Bunn* ] is misplaced."). As the court aptly stated in *Rieser v. Fifth Third*

---

4. Chase notes that the *Cooperman* court cited *Collins v. Zambrano*, 1990 WL 12723 at *3 (Ohio Ct.App. Feb. 16, 1990). In *Collins*, the document at issue—a lease—was validly executed on its face. Extrinsic evidence was submitted in an attempt to show that the lease actually was defectively executed, which is appropriate under *Denison*. In response, the parties defending the validity of the lease submitted affidavits in opposition to the extrinsic evidence of defective execution, which the

court considered. Again, however, the lease was validly executed on its face. Accordingly, *Collins* is consistent with *Denison* and in no way supports Chase's position that extrinsic evidence can be used to correct a facially defective mortgage. In addition, even if *Collins* were inconsistent with *Denison*, this Court would be bound to apply the Ohio Supreme Court's decision in *Denison*, not a decision by a lower Ohio court.

*Mortgage Co. (In re Wahl),* 407 B.R. 883 (Bankr.S.D.Ohio 2009):

> [The district court decision in *Bunn*] determined that the property description was sufficient, but never suggested a change in Ohio law that would allow inquiry or constructive notice to be charged to a bona fide purchaser when the mortgage was defectively executed. In other words, the decision tacitly assumes the mortgage could be considered recorded because it was in substantial compliance with Ohio law. The facts in this adversary never reach the issue in *Bunn* because the Mortgage was defectively executed and, as a matter of law, the Trustee cannot be charged with constructive or inquiry notice because the mortgage is deemed not recorded.

*Wahl,* 407 B.R. at 892 (footnote omitted). And, as the Sixth Circuit stated in affirming *Bunn,* "[i]t is instructive to compare this case [*Bunn*] with those in which Ohio courts have set aside mortgages as inadequate to give constructive notice." *Argent Mortgage Co. v. Drown (In re Bunn),* 578 F.3d 487, 490 (6th Cir.2009). "Ohio courts have refused to allow a recorded mortgage to give constructive notice when the mortgage had been executed in violation of a statute." *Id.* Here, the Mortgage was defectively executed under Ohio statutory law. The Court, therefore, rejects Chase's argument—based on the district court's decision in *Bunn*—that the recording of the Mortgage provided the Trustee with inquiry notice of Chase's interest in the Property.

 Chase also argues that the purported recording of the Subordination Agreement put the Trustee on notice of Chase's interest in the Property. *See* Opp'n Br. at 6. The Trustee counters by asserting that the Court should not consider the Subordination Agreement because "[t]he subordination agreement has not been properly authenticated through the use of an affidavit as required by Rule 56 of the Federal Rules of Civil Procedure." Reply at 9. The Trustee's position is correct. *See Investors Credit Corp. v. Batie (In re Batie),* 995 F.2d 85, 89 (6th Cir. 1993) ("Under Bankruptcy Rule 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure into bankruptcy adversary proceedings, documents such as these, *if they are not part of the* 'pleadings, depositions, answers to interrogatories, and admissions on file,' can only enter the record as attachments to an appropriate affidavit to constitute a basis for summary judgment. Therefore, the bankruptcy court should not have relied on the statements attached to [the] motion for summary judgment if they did not comply with Bankruptcy Rule 7056." (citation omitted)). Neither the Trustee's Complaint nor Chase's answer references the Subordination Agreement. In fact, neither party submitted the Subordination Agreement to the Court until Chase did so by attaching a purported copy of the Subordination Agreement as an exhibit to its brief in opposition to the Motion. The brief, however, is not a pleading. *See* Fed. R.Civ.P. 7(a) (listing the pleadings that may be filed in federal court). The only affidavit filed by Chase in support of its opposition to the Motion was that of Ms. Curtis, the notary public. *See* Curtis Aff. Attached as Exhibit A to that affidavit was "a true and exact copy of the Mortgage[,]" a copy of which had been previously filed as an exhibit to the Complaint; attached as Exhibit B to the Curtis Affidavit was a copy of a "Borrower Certification." Chase, however, did not attach the Subordination Agreement to the Curtis Affidavit and made no other attempt to authenticate the Subordination Agreement or make it part of the evidentiary record. This failure of authentication is fatal to the admissibility of the Subordination Agreement.

*See Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 635–36 n. 20 (8th Cir.2000) ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of [Rule 56(e) ]. Documents which do not meet those requirements cannot be considered."); *Vanguard Transp. Sys., Inc. v. Volvo Trucks N. Am., Inc.*, 2006 WL 2373273 at *7 (S.D.Ohio Aug. 14, 2006) ("The ... [l]etters were not authenticated by any affidavit .... As such, the ... [l]etters are inadmissible for purposes of this summary judgment motion."); *Ag Credit, ACA v. Walton (In re Walton)*, 158 B.R. 948, 951 (Bankr.N.D.Ohio 1993) (refusing to consider agreements attached to summary judgment brief that were not entered into evidence as an attachment to an affidavit). The Court, therefore, cannot consider the effect of the Subordination Agreement.

In sum, given the notary public's failure to properly certify the acknowledgment, the Trustee has established that the Mortgage was not capable of being recorded because it failed to substantially comply with § 5301.01. The case law is clear that a defective mortgage does not place a trustee on notice. *See Zaptocky*, 250 F.3d at 1028; *Bozman*, 365 B.R. at 829; *Cala*, 2008 WL 2001761 at *3. Thus, the Mortgage failed to put the Trustee—as a subsequent bona fide purchaser—on constructive notice. Accordingly, the Trustee, as a bona fide purchaser under § 544(a)(3), is entitled to avoid the Mortgage on the Debtor's one-half interest in the Property. The Trustee, however, has not provided any basis for avoidance of the Mortgage on the one-half interest in the Property held by Jason, who has not commenced a bankruptcy case. *See Stanziale v. Vanguard Info–Solutions Corp. (In re Allserve Sys.*

*Corp.)*, 2007 WL 1464407 at *5 (Bankr. D.N.J. May 17, 2007) ("[T]he Trustee may not use § 544 as a tool to avoid the claims or lien interests held by creditors of a *non-debtor* ....").

### D. Counts III and IV: Preservation of the Mortgage and Objection to Claim

Section 551 of the Bankruptcy Code states that "[a]ny transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551. Because the Mortgage is avoided, § 551 preserves the portion of the Mortgage granted by the Debtor on her one-half interest in the Property for the benefit of her estate. *See Castle Nursing Homes, Inc. v. Ransier (In re Sullivan)*, 359 B.R. 357, 2007 WL 1018763 at *6 (6th Cir. BAP 2007) ("Any transfer avoided under § 544 is automatically 'preserved for the benefit of the estate.'" (quoting § 551)); *Terlecky v. Am. Cmty. Bank (In re Godwin)*, 217 B.R. 540, 543 (Bankr.S.D.Ohio 1997) ("The Court concludes that pursuant to 11 U.S.C. § 544(a)(3), the Trustee is able to avoid the ... lien .... That lien is automatically preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 551."). And because the Trustee can avoid the Mortgage as to the Debtor's one-half interest in the Property, Chase is left with an unsecured claim. *See Durango Georgia Paper Co. v. Milton J. Wood Fire Prot., Inc. (In re Durango Georgia Paper Co.)*, 356 B.R. 305, 313 (Bankr.S.D.Ga. 2005) (authorizing the trustee to avoid the defendant's lien and reclassifying the defendant's proof of claim as a general unsecured claim). The Trustee, however, has

established no basis for the Court to disallow that unsecured claim.

## VI. Conclusion

For the foregoing reasons, the Court **GRANTS** the Motion in part and **DENIES** it in part. The Court **GRANTS** summary judgment on (1) Count II of the Complaint; the Mortgage on Debtor's one-half interest in the Property is avoided; and (2) Count III of the Complaint; the Mortgage on the Debtor's one-half interest is preserved for the benefit of the Debtor's bankruptcy estate. The Court **DENIES** summary judgment on Count IV of the Complaint to the extent that the Trustee requests the disallowance of any and all claims of Chase, but **GRANTS** summary judgment to the extent the Trustee requests the Court to reclassify any such claims as unsecured. The Court **DENIES** summary judgment on, and **DISMISSES**, Count I of the Complaint. The Court will enter a separate judgment entry in accordance with this memorandum opinion.

**IT IS SO ORDERED.**