In re Mohamed KEBE, Debtor.

Susan L. Rhiel, Plaintiff,

v.

Central Mortgage Company,
et al., Defendants.

Bankruptcy No. 10–52667.
Adversary No. 10–2172.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division,
at Columbus.

March 30, 2012.

Treisa L. Fox, Columbus, OH, for Plaintiff.

Maria C. Mariano Guthrie, Carlile Patchen & Murphy LLP, Nathan L. Swehla, Cincinnati, OH, for Defendant, Central Mortgage Company.

Joseph M. Romano, The Romano Law Firm, Cleveland, OH, for Defendant, Mamadou Seye.

## MEMORANDUM OPINION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I. Introduction

Susan L. Rhiel ("Trustee"), the trustee appointed in the Chapter 7 case of Mohamed Kebe ("Debtor"), commenced this adversary proceeding to obtain, among other things: (1) avoidance of the Debtor's mortgage on certain real property ("Mortgage"); (2) preservation of the lien represented by the Mortgage for the benefit of the Debtor's estate; and (3) sale of the co-owner's interest in the property. Pending before the Court is the Trustee's motion for summary judgment ("Motion") (Doc. 23), as well as responses to the Motion filed by Mamadou Seye ("Seye"), the co-owner of the property ("Seye Response")

(Doc. 27), and Central Mortgage Company ("Central"), the holder of the Mortgage ("Central Response") (Doc. 31).[1]

For the reasons explained below, the Court concludes that the Trustee is entitled to summary judgment on her claims for avoidance of the Mortgage under 11 U.S.C. § 544(a)(3) (Count Two of the Complaint) and preservation of the lien represented by the Mortgage for the benefit of the Debtor's estate pursuant to § 551 (Count Four). On the current state of the record, however, summary judgment on the request to sell Seye's interest in the property (Count Six) is not appropriate. The Court therefore denies summary judgment on Count Six. The Court also declines to grant summary judgment in favor of the Trustee on her remaining claims for relief.[2]

### II. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2).

### III. Background

**A. Background Relevant to the Avoidance of the Mortgage Under § 544(a)(3)**

The facts that are material to the issue of avoidance are undisputed. On March 11, 2010 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On September 20, 2004, the Debtor granted the Mortgage on his interest in real property

---

**1.** Also before the Court are the Trustee's reply in support of summary judgment (Doc. 37) ("Reply"), her notice of supplemental authority ("Notice") (Doc. 38), Central's response to the Notice (Doc. 42) and the Trustee's reply to that response (Doc. 44).

**2.** In the remaining counts of the Complaint the Trustee seeks: (1) a declaratory judgment that the Debtor's one-half interest in the property is unencumbered by the Mortgage (Count One); (2) avoidance of the Mortgage under § 547 (Count Three); and (3) recovery from Central under § 550 (Count Five).

located at 6797 Sowers Drive, Canal Winchester, Ohio 43110 ("Property").[3] The Debtor owns the Property jointly with Seye.

The certificate of acknowledgment accompanying the Mortgage provides as follows:

**STATE OF OHIO,** *Franklin* County ss:

This instrument was acknowledged before me this *20th of September, 2004* by

My Commission Expires: *life* *James N. Blazek*

Notary Public

In other words, the certificate of acknowledgment is blank in the place where the persons acknowledging the signing of the Mortgage should have been identified.[4] This is the Trustee's sole factual basis for the avoidance of the Mortgage. *See* Mot. at 4.

According to Central, despite the blank certificate of acknowledgment, the Mortgage substantially complies with Ohio law. In support of its substantial-compliance argument, Central relies on the following undisputed facts:

1) Seye and Debtor [are both included] in the granting clause [of the Mortgage][[5]]; 2) Except for the signature page, Seye initialed every page of the Mortgage as follows, "MS and MK by MS," including the page containing the [certificate of] acknowledgment ...; 3) their names were typed on the Mortgage below their signature; 4) Seye signed the Mortgage individually and as attorney in fact for Debtor; 5) the Nota-ry's signature and stamp appear beneath the acknowledgment.

Central Resp. at 13–14.

According to Central, the Trustee cannot avoid the Mortgage because she had constructive notice of it as of the Petition Date. In support of its constructive-notice argument, Central relies on the following undisputed facts:

The Mortgage was recorded on September 24, 2004 in the Franklin County, Ohio Recorder's Office ("Recorder"). *See id.* at 2. The Mortgage was assigned to Central by means of an assignment dated November 7, 2008 and recorded on December 12, 2008 ("Assignment"). *See id.* at 2–3. The Assignment contains a legal description of the Property and also provides as follows:

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Washtenaw Mortgage Company its successors and assigns, hereby assign[s] and transfer[s] to Central Mortgage Company its successors and assigns, all its right, title and interest in and to a certain mortgage executed by Mamadou Seye and Mohamed Kebe and bearing the date of the 20th day of September 2004 and recorded on the 24th day of September 2004 in the office of the Recorder of Franklin County, State of Ohio in Instrument # 200409240224049.

Central Resp. Ex. A–4.

On December 9, 2008, Central filed a foreclosure complaint against the Debtor and Seye in the Franklin County, Ohio

---

**3.** Seye signed the Mortgage on his own behalf and on behalf of the Debtor, who had authorized Seye to do so pursuant to a power of attorney that was properly executed and recorded. The Trustee does not allege that the Mortgage is avoidable based on any defects in the execution or recording of the power of attorney.

**4.** The text reproduced above in italics was handwritten; the remainder was printed in one or more typefaces. James Blazek subscribed his name to the certificate of acknowledgment as notary public. The certificate of acknowledgment bears two additional items— the notary public seal and notarial stamp of Mr. Blazek—that are not reproduced above.

**5.** The defined term "Borrower" includes both the Debtor and Seye, and the granting clause states that "Borrower does hereby mortgage...." *See* Mortgage at 1, 3.

Court of Common Pleas ("State Court"), Case No. 08 CVE 12–17508 ("Foreclosure Action"). The Foreclosure Action sought a judgment on the promissory note ("Note") executed by the Debtor and Seye and sought foreclosure of their interests in the Property. In paragraph 3 of the State Court complaint, Central stated that the Mortgage was a good and valid first lien upon the Property. On February 19, 2009, Central filed a motion for default judgment against Seye and the Debtor. On that same day, Janice Davis, the Vice President of Central, filed an affidavit in the Foreclosure Action ("Davis Affidavit") asserting Central's interest in the Property and identifying the Note and the Mortgage. On February 23, 2009, the State Court granted Central default judgment against Seye and the Debtor ("Judgment Entry"). The Judgment Entry was never vacated, released or satisfied. On March 31, 2009, Central voluntarily dismissed the Foreclosure Action without prejudice. *See* Central Resp. at 4–5.

Central did not file a certificate of judgment with the Recorder, and records contained on a website maintained by the Recorder show that no such document was filed in those records. Likewise, records contained on a website maintained by the Franklin County Clerk of Courts ("Clerk") show that no certificate of judgment was filed with the Clerk, and Central does not contend that it did so.

In support of its objection, Central filed the Affidavit of Dow T. Voelker ("Voelker Affidavit"). Dow T. Voelker ("Voelker") is an attorney and a title examiner. In the Voelker Affidavit, Voelker states that he examined the documents filed of record with the Recorder and the Clerk with respect to the Property. He also states that "[a]s a title examiner, who has examined

real estate records for twenty-five (25) years, I would have inquired and found [the Mortgage, the Assignment, the Foreclosure Action and the Davis Affidavit]" and that "[a]s a title examiner who would issue a title insurance policy on the Property, I would not have ignored the [the Mortgage, the Assignment, the Foreclosure Action and the Davis Affidavit][,] and I would have identified Central's interest in the Property." Voelker Aff. ¶¶ 14 & 15.

## B. Background Relevant to the Sale of the Property Free of Seye's Interest

As explained below, the facts relevant to the Trustee's request to sell the Property free of Seye's interest are disputed:

### 1. The Trustee's Allegations

The Trustee has attached to the Motion an affidavit ("Trustee Affidavit") stating that:

Judging from my knowledge and experience, partition of the [Property] is impracticable.... A sale of the estate's undivided one-half interest in the Property would realize significantly less for the estate than a sale of the Property free of the interest of Mamadou Seye.... The benefit to the estate of a sale of the Property free of the interest of Seye outweighs the detriment, if any, to Seye.... To the best of my knowledge, the Property is not used [in] the ... production, transmission, or distribution[,] [for sale] [,] of electric energy or of natural or synthetic gas for heat, light, or power.

Trustee Aff. at 1–2.

### 2. Seye's Allegations

Seye responded to the Trustee's allegations with statements set forth in the Seye Response.[6] First, Seye alleges that the

---

6. Earlier in the adversary proceeding, Seye also filed a third-party complaint (Doc. 12) against Pillar Title Agency, Inc. ("Pillar"), alleging that it was the negligence of Pillar—the company hired to conduct the closing—that resulted in the Trustee seeking to avoid the

Debtor owns little, if any, of the equitable interest in the Property:

As of the date of this Response, Seye has made all the monthly payments and has paid for all maintenance and upkeep of the Property. The Debtor has not made any payments.

. . . .

... Seye maintains the Property as his primary residence and has paid all of the monthly payments due on the Note, all of the insurance premiums for the Property, and all of the maintenance and upkeep of the Property. The Trustee provides no evidence that Debtor has contributed any money for or toward the Property whatsoever. These facts do not support the contention that the Debtor has any substantial equitable interest. The facts, instead, lead to the presumption that Debtor's equitable interest in the Property is very minimal if non-existent.

Seye Resp. at 2, 4–5.

Second, Seye contends that the benefit to the estate of the sale of the Property would not outweigh any detriment to Seye, stating as follows:

The Trustee's claim that the harm to Seye is outweighed by the benefit to the estate also fails on application of the facts. The Debtor claims on his petition that the Property has a current value of $161,000.00. The current balance on the Note is $138,592.02, which leaves an equity balance of $22,405.98. As noted above, the Trustee makes no assertion as to the Debtor's actual percentage of equitable interest in the property.... [F]or the sake of this argument only, let us assume that it is one half. In order to protect his personal residence, Seye would have to find additional financing for $80,500. That would make the total indebtedness on the Property $219,094.02, or 136% of the current value. It is highly improbable that Seye will be able to secure a loan, with so much of it being unsecured, and would not be able to purchase the Debtor's interest, contrary to the assertion's of the Trustee.

Another way to look at it is that, again, assuming for the sake of argument that the Debtor's interest is one half and also assuming that the property could sell for $161,000, the estate would receive $80,500. Seye would receive $0 and still owe $58,094.02 on the Note. Seye would have lost $11,202.99 in equity on the property and would have lost his personal residence for which he paid $69,256.60 in just principal and interest alone (on the Note). All told, Seye would be harmed a total of $138,553.61 without even figuring in all of Seye's costs. The Trustee's argument is that a $80,500 benefit to the estate outweighs a detriment to Seye of $138,553.61. It is highly probabl[e] that, if this were to happen, Seye would have to consider bankruptcy himself. Given these facts, the harm to Seye significantly outweighs the benefits to the estate....

Mortgage. Pillar sought dismissal of the third-party complaint, arguing that the Court lacked subject-matter jurisdiction. The Court concluded that Seye failed to meet his burden of establishing that the outcome of the proceeding between Pillar and Seye, which was initiated by the third-party complaint, could conceivably have any effect on the Debtor's estate being administered by the Trustee and, based on a lack of subject-matter jurisdiction over Seye's negligence claim, dismissed the third-party complaint. *See Rhiel v. Cent. Mortg. Co. (In re Kebe)*, 444 B.R. 871 (Bankr. S.D.Ohio 2011). Central subsequently filed a motion for leave to bring a third-party com-

*Id.* at 5–6.[7]

## IV. Legal Analysis

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure ("Civil Rule(s)"), made applicable in this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a).[8] "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (internal quotation marks omitted). A dispute is genuine only if it is "based on evidence upon which a reasonable [finder of fact] could return a [judgment] in favor of the non-moving party." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir.2009). And a "factual dispute concerns a 'materi-

al' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Id.*

### B. Avoidance Under § 544(a)(3)

■ Section 544(a)(3) of the Bankruptcy Code provides as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). Exercising the "strong-arm powers" granted her by

---

plaint against Pillar (Doc. 53), a motion that the Court also denied. *See* Doc. 58.

7. In a motion she filed for appointment of a settlement judge pursuant to Local Bankruptcy Rule 9019–2(b), the Trustee stated that "[t]he Debtor and Seye are interested in keeping [the Property] and, upon information and belief, are current on their mortgage payments" and that "[t]he Trustee has always been willing to resolve this case in a way that would allow [the Debtor and Seye] to keep the house, if that is possible." Doc. 39 at 4. Central filed a response stating that it "agrees that a mediation process would be helpful in this matter." Doc. 43. at 1. The Court granted the motion, but no settlement was reached.

8. Pursuant to an amendment to Civil Rule 56 that became effective on December 1, 2010 (after this adversary proceeding was commenced), the summary judgment standard now appears in Civil Rule 56(a) rather than,

as it formerly did, Civil Rule 56(c). *See* Fed. R.Civ.P. 56 Advisory Committee Notes (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c). . . ."). The Court is citing the amended rule given that application of "the amended version of [Civil] Rule 56 in this case is just and practicable and would not work a manifest injustice, because the amendments do not change the summary judgment standard or burdens." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n. 4 (1st Cir.2011); *see also Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312, 1316–17 n. 4 (11th Cir.2010) ("Amendments to the Federal Rules of Civil Procedure govern proceedings after the date they are effective in an action then pending unless the Supreme Court specifies otherwise or the court determines that applying them in a particular action would be infeasible or work an injustice. Fed.R.Civ.P. 86(a). We apply the language of Rule 56 as amended.").

§ 544(a)(3), the Trustee seeks to avoid the Mortgage as to the Debtor's one-half interest in the Property because the certificate of acknowledgment is indisputably blank. It is well-established that trustees may avoid mortgages under § 544(a)(3) based on blank certificates of acknowledgment, *see, e.g., Rhiel v. Huntington Nat'l Bank (In re Phalen)*, 445 B.R. 830 (Bankr. S.D.Ohio 2011) (analyzing numerous cases), and there is no point in re-plowing that ground here. Instead, the Court will address why the Trustee is entitled to avoidance in this case notwithstanding each of Central's arguments to the contrary.

### 1. The Mortgage

 First, Central's reliance on the recording of the Mortgage is misplaced. "Since the Bankruptcy Code gives [the] trustee ... the rights of a bona fide purchaser without actual knowledge ... [the trustee] is entitled to the rights of a subsequent bona fide purchaser without knowledge of the prior mortgage." *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1028 (6th Cir.2001). And, although "the Bankruptcy Code's strong arm clause does not immunize a trustee who has constructive [notice] of a prior mortgage," *id.* at 1027, "Ohio law deems

any purchaser—including bankruptcy law's hypothetical [bona fide purchaser]—to have constructive notice of all instruments executed by the current owner of the land" only if those instruments are " 'proper[ly] record[ed].' " *Argent Mortg. Co. v. Drown (In re Bunn)*, 578 F.3d 487, 489 (6th Cir. 2009) (quoting *Thames v. Asia's Janitorial Serv., Inc.*, 81 Ohio App.3d 579, 611 N.E.2d 948, 953 (1992)).[9] In other words, "[u]nder Ohio law, only mortgages that were *properly recorded* have priority over the interests of bona fide purchasers." *Hazlett v. Chase Home Fin., LLC (In re Nowak)*, 414 B.R. 269, 274 (Bankr.S.D.Ohio 2009) (emphasis added). Furthermore, "[t]o be properly recorded ... the Mortgage must be an 'instrument[ ] of writing *properly executed* for the conveyance or encumbrance of lands, tenements, or hereditaments....' " *Id.* (quoting Ohio Rev.Code Ann. § 5301.25).[10]

 Central's contention that the Mortgage was properly executed, *see* Central Resp. at 11, is plainly incorrect. The blank certificate of acknowledgment rendered the Mortgage improperly executed. *See, e.g., Phalen*, 445 B.R. at 841–57 (analyzing relevant provisions of the Ohio Revised Code as well as *Smith's Lessee v. Hunt*, 13 Ohio 260 (1844) and other cases).

---

9. Ohio law controls because: (1) where, as here, the Bankruptcy Code "does not specifically address an issue that arises in bankruptcy, the bankruptcy court looks to state law, to the extent that it does not conflict with the [B]ankruptcy [C]ode[,]" *Reinhardt v. Vanderbilt Mortg. & Fin., Inc. (In re Reinhardt)*, 563 F.3d 558, 563 (6th Cir.2009) (internal quotation marks omitted); and (2) the Mortgage is on real property located in Ohio. *See Zaptocky*, 250 F.3d at 1024 ("Since this mortgage concerns real property located in Ohio, this inquiry is governed by Ohio law.").

10. Ohio Revised Code § 5301.25(A) provides as follows:
 All deeds, land contracts referred to in division (A)(2)(b) of section 317.08 of the [Ohio]

Revised Code, and instruments of writing *properly executed* for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in division (C) of this section and section 5301.23 of the [Ohio] Revised Code, shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.
Ohio Rev.Code Ann. § 5301.25(A) (emphasis added).

And not only is an improperly executed mortgage "not entitled to [be] record[ed] ... even if it is recorded, the defective mortgage is treated as though it has not been recorded." *Mortg. Elec. Registration Sys. v. Odita,* 159 Ohio App.3d 1, 822 N.E.2d 821, 825 (2004).

 Central argues that, despite the blank certificate of acknowledgment, the Mortgage was entitled to be recorded because the certificate of acknowledgment adequately identified the persons whose signatures were being acknowledged under Ohio's substantial-compliance standard.[11] But nothing to which Central points—not the inclusion of Seye and the Debtor in the Mortgage's granting clause, nor Seye's initialing of the Mortgage, nor the fact that Seye signed the Mortgage individually and as attorney in fact for Debtor, nor the appearance of their names on the Mortgage below the signatures—causes the certificate of acknowledgment itself to identify the persons whose signatures were being acknowledged. The Mortgage, therefore, was not executed in substantial compliance with Ohio law. *See*

*Fifth Third Bank v. Farrell,* 2010 WL 3852223, at *6 (Ohio Ct.App. Sept. 28, 2010) ("In the present case, there is no ... information relating to Michael Farrell in the [certificate of acknowledgment]. It is blank.... We therefore find, pursuant to *Smith's Lessee,* [that] the certificate of [acknowledgment] in the present case does not substantially comply with [Ohio Revised Code § ] 5301.01 because it was left blank.");[12] *Phalen,* 445 B.R. at 848 ("[C]ourts in this district consistently have held that a certificate of acknowledgment does not satisfy the substantial-compliance standard if it completely fails to identify the mortgagor.").[13]

The representation made in the Voelker Affidavit that Voelker would have found and not ignored the Mortgage is beside the point because the issue here is not whether someone might have obtained actual knowledge of the Mortgage—which, as explained above, cannot be charged to the Trustee—but whether the Mortgage provided constructive notice of the Debtor's interest in the Property.

11. Under the substantial-compliance standard, "[t]he certificate ... need not be in the words of the statute; if it contains the substance of the requirements, though in the language of the officer, it will be sufficient." *Ward's Heirs v. McIntosh,* 12 Ohio St. 231, 242 (1861). Under this standard, however, "no substantial part of the requirement[s] can be dispensed with, and it must appear expressly or by necessary inference from the language of the certificate, that all the material provisions have been complied with." *Id. See also Phalen,* 445 B.R. at 848–50.

12. Section 5301.01(A) of the Ohio Revised Code, which establishes four requirements for the proper execution of a mortgage under Ohio law, provides in relevant part as follows:

A deed, mortgage, land contract ... or lease of any interest in real property and a memorandum of trust ... shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land con-

tract, or lease or shall be signed by the trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgment and subscribe the official's name to the certificate of acknowledgment. Ohio Rev.Code Ann. § 5301.01(A) (West 2012).

13. Central also takes the position that the Trustee must, as a prerequisite to avoiding the Mortgage, demonstrate that "the Mortgage was fraudulently executed or is not genuine." Central Resp. at 13. This is an incorrect statement of the law. There is no requirement that a Chapter 7 trustee establish that a mortgage was fraudulently executed or was not genuine in order to avoid the mortgage based on a blank certificate of acknowledgment.

### 2. The Assignment

As with the Mortgage, the representation made in the Voelker Affidavit that Voelker would have found and not ignored the Assignment does not support Central's argument against avoidance because the issue is not whether someone might have obtained actual knowledge of the Mortgage through the recording of the Assignment, but whether the recording of the Assignment provided constructive notice of the Mortgage. For the reasons explained below, the Court concludes that the Assignment's recording did not provide constructive notice of the Mortgage.

 Although the Assignment itself was properly recorded and it does refer to the Mortgage, a recorded instrument's reference to a prior instrument does not provide constructive notice if the referenced instrument itself was defectively executed. *See Thames*, 611 N.E.2d at 954. In *Thames*, where a land contract was at issue, the Ohio court of appeals held that "while it is undisputed that the ... deed referencing the land contract ... was recorded ... the land contract to which it referred was defectively executed and, therefore, the reference in the deed to the land contract does not constitute constructive notice ... of the existence of the land contract...." *Id.* This holding was based on the rule of law that "where [a] land contract ... is defectively executed in contravention of [Ohio Revised Code § ] 5301.01, the reference to it in another recorded deed does not serve as constructive notice to a subsequent purchaser...." *Id.*

 Substitute "mortgage" for "land contract" and "assignment of mortgage" for "deed"—under Ohio law there is no reason not to do so—and the rule of law announced in *Thames* directly applies here. That rule of law, of course, is that, if a mortgage is defectively executed in contravention of Ohio Revised Code § 5301.01, the reference to it in an assignment of mortgage does not serve as constructive notice to a subsequent purchaser.[14] This must be the result here. As discussed in more detail below, "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940). Although the Assignment was properly recorded and the Assignment referenced the Mortgage, the Mortgage itself was defectively executed. Accordingly, the reference in the Assignment to the Mortgage does not provide constructive notice of the existence of the Mortgage.

The arguments and cases on which Central relies to support its position to the contrary are unavailing. Central relies on *Noland v. Wells Fargo Bank N.A. (In re Williams)*, 395 B.R. 33 (Bankr.S.D.Ohio 2008) for the proposition that, for the purpose of constructive notice, "[t]he 'contents' of ... a recorded instrument include recitals or disclosures therein as to outstanding rights in the property even

---

**14.** Applying the law of other states, federal courts have, consistent with *Thames*, held that an assignment—even if it was properly executed and recorded—does not provide constructive notice of a defectively executed mortgage. *See Stern v. Cont'l Assurance Co. (In re Ryan)*, 851 F.2d 502, 511–12 (1st Cir. 1988); *DeGiacomo v. CitiMortgage, Inc. (In re Nistad)*, 2012 WL 272750, at *4 (Bankr. D.Mass. Jan.30, 2012); *Lyon v. Franklin Mortg. Funding (In re Shannon)*, 343 B.R. 585, 588–89 (Bankr.E.D.Ky.2006); *Wash. Mut. Home Loans v. Yearwood (In re Yearwood)*, 318 B.R. 227, 228–29 (Bankr.M.D.Ga. 2004).

though not created by that instrument." *Williams,* 395 B.R. at 45. *See* Central Resp. at 10. Central fails to note, however, that *Williams* was quoting *Thames* and that, as discussed above, the holding of *Thames*—that a recorded instrument's reference to a prior instrument does not provide constructive notice if the referenced instrument itself was defectively executed—is directly contrary to Central's argument. In addition, *Williams* is inapposite. In that case the bankruptcy court held that a properly executed and recorded mortgage could not be avoided by the trustee merely because an assignment of the mortgage had not been recorded. *See Williams,* 395 B.R. at 45 ("[T]he Trustee will take subject to the Mortgage despite the failure to record an assignment of that Mortgage. . . ."). Unlike in *Williams,* in this case the Mortgage was not properly executed and thus was not entitled to be recorded. The holding of *Williams,* therefore, has no application on the facts of this case.

Also inapposite is another decision on which Central relies, *Drown v. Wells Fargo Bank, N.A. (In re Scott),* 424 B.R. 315 (Bankr.S.D.Ohio 2010). In *Scott,* the issue was whether Chapter 7 trustees could avoid mortgages based on alleged defects in the execution of deeds through which the debtors acquired their property, not on any defects in the execution of mortgages themselves. The Court held that the mortgages, having been perfected through proper recording by the time the debtors filed their bankruptcy cases, were not avoidable by the trustees in exercise of their strong-arm powers. As Central states, the Court, "[r]elying on *Wayne Building & Loan Co. v. Yarborough,* 11 Ohio St.2d 195, 228 N.E.2d 841 (1967) . . . explained that as hypothetical purchasers of the property, the Trustees would be deemed to have searched the real estate records under the Debtors' names to have found the properly executed and recorded

mortgages." Central Resp. at 11. True, but here the Mortgage was not properly executed and thus was incapable of proper recordation. *Scott,* then, undercuts rather than supports Central's position. *See Scott,* 424 B.R. at 328 ("The deemed title search . . . provides a trustee with constructive notice of properly executed and recorded real-estate instruments only, not of improperly executed or unrecorded ones.").

Central also relies on *Tiller v. Hinton,* 19 Ohio St.3d 66, 482 N.E.2d 946 (1985) in support of its argument that the Trustee had constructive notice of the Mortgage. In *Tiller,* the Ohio Supreme Court held that "[p]ursuant to [Ohio Revised Code § ] 5301.25, an unrecorded easement is not enforceable against a bona fide purchaser for value who has no actual or constructive notice of such easement." *Tiller,* 482 N.E.2d at 948 (syllabus). That holding provides no support for Central's argument here. Central contends that the Assignment's reference to the Mortgage provides "inquiry notice that the Mortgage encumbers the Property" and that "[t]o find that the Trustee was not put on inquiry notice . . . would render the long standing Ohio doctrine of inquiry notice a nullity." Central Resp. at 12. Central then describes Ohio law on inquiry notice as follows: " '[A] purchaser will be charged with knowledge of a previous encumbrance upon real property when he has knowledge of facts which would induce a prudent person to make an inquiry by which he would have or could have obtained knowledge of [the] prior encumbrance.' " *Id.* at 11–12 (quoting *Thames,* 611 N.E.2d at 953). What Central omits from its quotation of *Thames,* however, is that two sentences later the court stated that the inquiry-notice standard "has only been applied *in Ohio in the absence of a recording statute.*" *Thames,* 611 N.E.2d at 953 (emphasis in original) (citing *Wayne Building,*

228 N.E.2d at 847; *Shaker Corlett Land Co. v. Cleveland,* 139 Ohio St. 536, 41 N.E.2d 243, 246 (1942); *Hembree v. Mid-America Fed. S. & L. Assn.,* 64 Ohio App.3d 144, 580 N.E.2d 1103, 1110–11 (1989)). As discussed above, the court in *Thames* held that where—as in that case and here—Ohio's recording statute applies, a recorded instrument's reference to another instrument does not provide constructive notice if the referenced instrument itself was defectively executed. *See Thames,* 611 N.E.2d at 954.

■■■ In the final analysis, it is a correct application of *Thames*—not Central's incorrect interpretation of that decision or its misplaced reliance on other inapposite cases—that must govern the issue of whether the Assignment provided constructive notice of the Mortgage.[15] This is because, as noted above, in making its prediction of how the Ohio Supreme Court would rule—which is the Court's role here—a decision of an Ohio appeals court such as *Thames* must not be disregarded unless there exists "other persuasive data that the highest court of the state would decide otherwise." *West,* 311 U.S. at 237, 61 S.Ct. 179. *See also Puckett v. Tenn. Eastman Co.,* 889 F.2d 1481, 1485 (6th Cir.1989) ("[A] federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."); *Grantham & Mann, Inc. v. Am. Safety Prods., Inc.,* 831 F.2d 596, 608–09 (6th Cir.1987) ("[A]lthough a decision by a lower state court is not controlling where

the highest state court has not spoken, the decision of an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court *unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.*" (citations and internal quotations marks omitted)).

Central has failed to provide any such persuasive data. Unlike *Thames,* the decisions on which Central relies are not on point and therefore cannot override the requirement that the Court apply *Thames. See Gettins v. U.S. Life Ins. Co.,* 221 F.2d 782, 785 (6th Cir.1955) ("It must be assumed that the Court of Appeals for Cuyahoga County was familiar with the prior cases decided by the Ohio Supreme Court. [T]he Supreme Court has . . . made no decision on the particular question involved in the present case. On the other hand, the Court of Appeals for Cuyahoga County appears to have supplied a controlling answer to the question here in issue. That being so, we are bound by it, until or unless the Supreme Court of Ohio gives a contrary answer. In these circumstances, it is not for us to exercise our independent judgment, to look to other jurisdictions, or to speculate as to what the Supreme Court of Ohio might some day decide.") (citing *West,* 311 U.S. at 223, 61 S.Ct. 179). Thus, the Court concludes that the result here must be consistent with *Thames*—that is, the Assignment's reference to the Mortgage, which was defectively executed, did

---

**15.** The parties have not cited any decisions by the Ohio Supreme Court addressing the issue of whether the proper recording of an assignment or other document that refers to a defectively executed instrument would provide third parties with constructive notice of the defectively executed instrument. Because the Ohio Supreme Court has not yet addressed this issue, the Court's role is to "ascertain

how that court would rule if it were faced with the issue." *Meridian Mut. Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir.1999). *See also In re Kimble,* 344 B.R. 546, 552 (Bankr.S.D.Ohio 2006) ("[T]he Court must make the best prediction . . . of what the [Ohio] Supreme Court would do if confronted with [the issue]." (internal quotation marks omitted)).

not provide constructive notice of the Mortgage.

### 3. The Foreclosure Action, the Davis Affidavit and the Judgment Entry

 Equally unavailing is Central's reliance on the Foreclosure Action, the Davis Affidavit and the Judgment Entry in support of its argument that the Trustee had constructive notice of the Mortgage. Central does not contend that it filed a certificate of judgment regarding the Foreclosure Action, the Davis Affidavit or the Judgment Entry with the Recorder, and records contained on a website maintained by the Recorder—of which the Court may take judicial notice, *see In re Trenton Ridge Investors, LLC,* 461 B.R. 440, 483 (Bankr.S.D.Ohio 2011)—show that no such document was filed in those records. Furthermore, records contained on a website maintained by the Clerk show that no certificate of judgment was filed with the Clerk, and Central does not contend that it did so. Filing a certificate of judgment with the Clerk would have provided Central with a judgment lien on the Property, and such a filing, if done properly, could have provided constructive notice of that lien to third parties; the Judgment Entry itself, however, does not provide constructive notice. *See State ex rel. Collier v. Farley,* 2006 WL 2692573, at *5 & n. 3 (Ohio Ct.App. Sept. 8, 2006) ("[P]ursuant to [Ohio Revised Code § ] 2329.02, a lien is immediately created upon the lands of the judgment debtor when a certificate of judgment is filed with the clerk of courts.

The act of filing is constructive notice to all parties of the existence of the lien.... In our view, the [Ohio Revised Code § ] 2329.02 provision that a judgment becomes a lien upon the filing of a certificate of judgment requires a filing in addition to the court's filing of the original judgment entry, even though that filing may also occur in the office of the clerk of the court which originally rendered the judgment." (citations omitted)).[16] Central, however, failed to file a certificate of judgment.

In short, Central did not take the steps necessary to place third parties on constructive notice of its interest in the Property. *See ABN AMRO Mortg. Grp., Inc. v. Roush,* 2005 WL 858182, at *1, *8 (Ohio Ct.App. Apr. 14, 2005) ("Here, it is undisputed that appellant did not record ... a certificate of judgment after she won the Roush lawsuit.... Thus, the trial court was correct in determining that appellee did not have constructive notice of appellant's interest in the property."). Absent the filing of a certificate of judgment, the Davis Affidavit, which was filed with the Clerk, is no more effectual for providing constructive notice than are the Judgment Entry and the Foreclosure Action.

 Under the doctrine of lis pendens, the Foreclosure Action would have prevented the Trustee from prevailing on her avoidance action if the Foreclosure Action had been pending as of the Petition Date. Unfortunately for Central, it was not. "Lis pendens is a Latin term that

---

**16.** Ohio Revised Code § 2329.02 provides in pertinent part as follows:

Any judgment or decree rendered by any court of general jurisdiction, including district courts of the United States, within this state shall be a lien upon lands and tenements of each judgment debtor within any county of this state from the time there is filed in the office of the clerk of the court of common pleas of such county a certificate of such judgment, setting forth the court in which the same was rendered, the title and number of the action, the names of the judgment creditors and judgment debtors, the amount of the judgment and costs, the rate of interest, if the judgment provides for interest, and the date from which such interest accrues, the date of rendition of the judgment, and the volume and page of the journal entry thereof.

Ohio Rev.Code Ann. § 2329.02.

means a suit pending." *Condren v. Harrison (In re Borison),* 226 B.R. 779, 782 n. 3 (Bankr.S.D.N.Y.1998). The following description by the Ohio Supreme Court of the common-law background of the doctrine of lis pendens is helpful in understanding why the doctrine does not apply here in light of the dismissal of the Foreclosure Action:

> " 'The general rule is that one not a party to a suit is not affected by the judgment. The exception is that one who acquires an interest in property *which is at that time involved in litigation in a court having jurisdiction of the subject-matter and of the person of the one from whom the interests are acquired,* from a party to the proceeding, takes subject to the judgment or decree, and is as conclusively bound by the result of the litigation as if he had been a party thereto from the outset. . . . It has been said that it is essential to the existence of a valid and effective *lis pendens* that three elements be present: (1) The property must be of a character to be subject to the rule; *(2) the court must have jurisdiction both of the person* and the *res;* and (3) the

property or *res* involved must be sufficiently described in the pleadings.' "

*Beneficial Ohio, Inc. v. Ellis,* 121 Ohio St.3d 89, 902 N.E.2d 452, 454–55 (2009) (quoting *Cook v. Mozer,* 108 Ohio St. 30, 140 N.E. 590 (1923) (emphasis added)).

In Ohio, the doctrine of lis pendens is codified in Ohio Revised Code § 2703.26, which also makes clear that the action must be pending in order for the doctrine to apply. *See* Ohio Rev.Code Ann. § 2703.26 (emphasis added) ("When a complaint is filed, the action is pending so as to charge a third person with notice of its pendency. *While pending,* no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title.") (emphasis added).[17] Because the Ohio Revised Code states that "[w]hile pending, no interest can be acquired by third persons in the subject of the action," Ohio Rev.Code Ann. § 2703.26, and because one of the requirements for the doctrine's application is that "the court must have jurisdiction both of the person and the *res,*" *Beneficial Ohio,* 902 N.E.2d at 455, courts consistently have held that lis pendens applies only while the action that gave rise to it re-

---

17. "[L]is pendens is a separate notice device from recording[,]" *E. Sav. Bank v. Bucci,* 2008 WL 5124559, at *8 (Ohio Ct.App. Dec. 4, 2008), and it applies even against bona fide purchasers. *See Beneficial Ohio,* 902 N.E.2d at 455 ("Th[e] [doctrine of lis pendens applies] irrespective of whether [the party against which it is asserted] has been made a party to the proceeding, or had actual notice of the pendency of the proceeding, and even where there was no possibility of his having had notice of the pendency of the litigation. It is immaterial that a purchaser was a *bona fide* purchaser and for a valuable consideration."). It is clear, therefore, that the proper application of the doctrine will prevent a trustee from avoiding a mortgage even if the mortgage is defectively executed. *See Treinish v. Norwest Bank Minn., N.A. (In re Periandri),* 266 B.R. 651, 659 (6th Cir. BAP 2001)

("The trustee's contention that the mortgage was improperly executed and is therefore invalid is an attack pursuant to the recording statutes—one form of constructive notice under Ohio law. Norwest defends the trustee's avoidance on the basis of lis pendens—another form of constructive notice under Ohio law and one that we must respect."); *Ransier v. Countrywide Home Loans, Inc. v. (In re Seymour),* 442 B.R. 652, 659 (Bankr.S.D.Ohio 2010) ("[T]he Court finds that by operation of the lis pendens statute, the Chapter 7 Trustee had constructive knowledge of Countrywide's [defectively executed mortgage] at the time the bankruptcy case was filed, and thus, could not acquire the status of a bona fide purchaser. Therefore, the Trustee cannot maintain an action to avoid Countrywide's lien interest pursuant to 11 U.S.C. § 544(a)(3).").

mains pending. *See, e.g., Helbling v. Cleary (In re Cleary)*, 2010 WL 2649949, at *6, 2010 Bankr.LEXIS 2156, at *16 (Bankr.N.D.Ohio July 1, 2010) ("[T]he trustee cannot be charged with constructive notice [of the mortgage] because the [foreclosure] case was not pending at the commencement of the bankruptcy petition on May 31, 2009. [Ohio Revised Code § 2703.26] requires that the case be 'pending' in order to charge third parties with notice."); *ABN AMRO Mortg.*, 2005 WL 858182, at *1, *7; *Bank of N.Y. v. Stambaugh*, 2003 WL 22844267, at *3 (Ohio Ct.App. Nov. 26, 2003) ("The doctrine of lis pendens protects a plaintiff's interest in real estate while the case is pending. The … action was no longer pending [when the mortgage to the bank was executed]. … [Thus,] [t]he doctrine of lis pendens does not protect appellee's interest in the real estate.").

The Ohio court of appeals decision in *ABN AMRO Mortgage* is particularly instructive here. In that case, not only had there been a dismissal of the lawsuit that was the linchpin for the application of lis pendens, but the prevailing party relied in part on an affidavit that appears to be inconsistent with the Voelker Affidavit:[18]

> On November 1, 2001, the trial court granted [Teresa Roush's] motion for summary judgment as to her claims in the … lawsuit [against her son Christo-

pher, on which the assertion of lis pendens was based ("Roush Lawsuit") ].

The order provided:

> Upon consideration of Motion of Plaintiff for Summary Judgment and any responses thereto it is determined that there no longer exists any genuine issue of material fact and [Teresa] is entitled to judgment as a matter of law. It is hereby ORDERED that [Teresa's] Motion is granted and the [Roush Lawsuit] is dismissed.
>
> . . . .

> On April 9, 2002, [Christopher] executed a note and conveyed a mortgage to [ABN AMRO Mortgage Group, Inc. ("ABN") ] in order to secure payment of said note.
>
> . . . .

> [Teresa] … argues that [ABN, which initiated a foreclosure action against Christopher] had constructive notice of her interest in the property as a result of the [Roush Lawsuit]. She argues that appellee had a duty to apprise itself in detail as to the disposition of the Roush [L]awsuit. . . .

> In response, [ABN] directs our attention to [Dirken T.] Voelker's affidavit, and argues the public records of the Franklin County Recorder and the Franklin County Clerk of Court did not provide notice of [Teresa's] alleged interest in the property.[19]

---

18. As an aside, it is interesting to note that the affiant in the *ABN AMRO Mortgage* case was Dirken Voelker, the person who notarized the Voelker Affidavit in this adversary proceeding.

19. In his affidavit, Dirken Voelker stated in pertinent part as follows:

> I examined the records of the Franklin County Clerk of Courts with respect to [Christoper] Roush and the [Roush property].
>
> As of April 2, 2002, the records of the Franklin County Clerk of Courts with respect to Mr. Roush and the [Roush proper-

ty] indicated that the only action regarding Mr. Roush was Case No. 01CVC04 3929, and the docket for that case showed that the case had been "Dismissed."

> Because the docket of the Franklin County Clerk of Courts indicated that Case No. 01CVC04 3929 was dismissed, no further investigation of the case was warranted. *ABN AMRO Mortg.*, 2005 WL 858182, at *3. According to the Ohio appeals court, "Voelker concluded that based on the foregoing, [ABN] was a 'bona fide purchaser for value at the time it obtained its mortgage interest in the property.' " *Id.*

. . . .

. . . [T]he court [did not] retain[ ] jurisdiction in the case after November 1, 2001, the date upon which it originally entered judgment in the Roush [L]awsuit. The trial court relinquished jurisdiction . [by dismissing the Roush Lawsuit] well before [ABN] obtained its mortgage interest. Thus, the doctrine of lis pendens does not demonstrate constructive notice on the part of [ABN].

*ABN AMRO Mortg.*, 2005 WL 858182, at *1–2, *7–9 (footnotes omitted).

Again, Voelker's statement that he would have found and not ignored the Foreclosure Action or the Davis Affidavit does not support Central's position in this adversary proceeding. Not only is the argument that Central makes based on the Voelker Affidavit inconsistent with the argument on which ABN AMRO Mortgage prevailed in the Ohio appeals court, the Voelker Affidavit cannot change the fact that the Foreclosure Action was no longer pending on the Petition Date. In light of the foregoing, the Court **GRANTS** summary judgment on Count Two in favor of the Trustee.

## C. Preservation of the Avoided Mortgage Under § 551

Pursuant to § 551 of the Bankruptcy Code "[a]ny transfer avoided under section . . . 544 . . . is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551. After avoidance, § 551 preserves the portion of the Mortgage granted by the Debtor on his one-half interest in the Property for the benefit of his estate. *See Castle Nursing Homes, Inc. v. Ransier (In re Sullivan),* 359 B.R. 357 (table), 2007 WL 1018763 at *6 (6th Cir. BAP Apr. 4, 2007) ("Any transfer avoided under § 544 is automatically 'preserved for the benefit of the estate.'" (quoting § 551)); *Terlecky v. Chase Home Fin., LLC (In re Sauer),*

417 B.R. 523, 541 (Bankr.S.D.Ohio 2009) (same). The Court therefore **GRANTS** summary judgment on Count Four in favor of the Trustee.

## D. Declaratory Judgment

In Count One the Trustee seeks a declaratory judgment "that the Debtor's one-half interest in the Property is not encumbered by the Mortgage." Compl. at 3. The Court has concluded that the Trustee may avoid the Mortgage for the reasons explained above. As a result, the Trustee's request for a declaratory judgment that the Debtor's one-half interest in the Property is not encumbered by the Mortgage is of no practical significance and therefore is moot. *See Finstad v. Florida, Dep't of Bus. & Prof'l Regulation,* 295 Fed.Appx. 352, 353 (11th Cir.2008) ("A complaint becomes moot when it no longer presents a 'live' controversy or a ruling on the issues would have no practical significance."). The Court accordingly **DISMISSES** Count One of the Complaint on the basis of mootness.

## E. Avoidance Under § 547

The Trustee seeks in Count Three to avoid the transfer of the Debtor's one-half interest in the Property to Central as a preferential transfer under § 547(b). In light of the Court's ruling that the Mortgage is avoidable pursuant to § 544(a)(3), the request for relief under § 547 is no longer of practical significance and therefore is moot. *See Finstad,* 295 Fed.Appx. at 353; *Hardesty v. U.S. Bank, N.A. (In re Schmidt),* 445 B.R. 865, 868 (Bankr. S.D.Ohio 2011) (dismissing as moot the Chapter 7 trustee's claim to avoid a mortgage under § 544(a)(1) after the court granted summary judgment in favor of the trustee on his claim to avoid the mortgage under § 544(a)(3)). The Court, therefore,

**DISMISSES** Count Three on the basis of mootness.

## F. Recovery Under § 550

■ In Count Five the Trustee seeks, pursuant to § 550, to recover from Central the value of property the Debtor transferred to it. Compl. at 5. Recovery is not appropriate where the avoidance of the mortgage is a sufficient remedy in and of itself. *See Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir.2003) ("[W]hen the avoidance alone is a sufficient remedy, there is no need for the trustee to seek recovery."); *Phalen*, 445 B.R. at 864 (citing additional cases). On the other hand, in those instances where "merely [avoiding] the [transfer] ... and placing the burden on the Trustee to sell the Property ... would not restore the bankruptcy estate to where it would have been had the [transfer] not taken place," *Slone v. Lassiter (In re Grove–Merritt)*, 406 B.R. 778, 812 (Bankr.S.D.Ohio 2009), recovery may be warranted. For the reasons explained below, it remains an open question whether the Trustee will be able to sell the Property; thus, it is too early to tell whether avoidance will be an adequate remedy on the facts of this case. The Court, therefore, **DENIES** the Trustee's request for summary judgment on Count Five of the Complaint without prejudice to her renewing the request in the event that she is unable to sell the Property.

## G. Sale of Seye's Interest Under § 363(h)

■ The Court also denies the Motion insofar as it relates to the Trustee's request to sell Seye's interest in the Property. Section 363(h) states as follows:

[T]he trustee may sell both the estate's interest ... and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h). "The Trustee bears the burden of proving each of the four elements of § 363(h)." *Durand v. Ackerman (In re Durand)*, 2010 WL 3834587, at *12 (E.D.N.Y. Sept. 27, 2010).

Seye characterizes the statements in the Trustee Affidavit relating to the requirements of § 363(h)(1) and (2) as "self-serving opinions" with "no factual basis...." Seye Resp. at 4. Central makes a similar point. *See* Central Resp. at 17 ("[T]he Trustee has failed to prove any of the elements under Section 363(h) demonstrating that she is entitled to sell the property. As noted above, the Trustee's affidavit contains only legal conclusions. This affidavit is not enough to support a motion to sell."). The Court, however, concludes that § 363(h)(1) and (2) are satisfied here. Because there is no question that the home located on the Property is a single family residence, *see* Seye Resp. at 1, there can be no genuine dispute that partition in kind of the Property among the estate and Seye is impracticable or that the sale of the estate's undivided interest in the Property would realize significantly less for the

estate than the sale of the Property free of Seye's interest. *See Bostic v. Nat'l City Bank (In re DeRee)*, 403 B.R. 514, 522–23 (Bankr.S.D.Ohio 2009) ("[C]ourts have recognized that as a general proposition [w]here property is a single family residence, there is no practicable manner of partition other than a sale and division of the proceeds" [and that] the sale of a bankruptcy estate's undivided interest will generate substantially less than the sale of the property free of each owner's interest because of the chilling effect that the sale of the undivided interest usually has on prospective purchasers of the property." (citations and internal quotation marks omitted)); *Berland v. Gauthreaux (In re Gauthreaux)*, 206 B.R. 502, 505–06 (Bankr. N.D.Ill.1997) (same). Accordingly, the Trustee has carried her burden of proof under § 363(h)(1) and (2).

Further, the Trustee Affidavit states that the Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power, and Seye does not contend otherwise. Section 363(h)(4), therefore, imposes no impediment to the entry of summary judgment in favor of the Trustee on her request to sell the Property free and clear of Seye's interest. Rather, the obstacle to the Trustee's obtaining summary judgment is § 363(h)(3), which requires her to establish that the benefit to the Debtor's estate of a sale of the Property free of Seye's interest outweighs any detriment to Seye.

 As with the other subsections of § 363(h), the ultimate burden of proving compliance with § 363(h)(3) rests with the Trustee. *See Peterson v. Lewis (In re Jenkins)*, 347 B.R. 77, 86 (Bankr.N.D.Ill. 2006) ("In connection with this requirement (as with the other three conditions of § 363(h)), the trustee bears the burden of proof."). But the burden under § 363(h) is a shifting one. The Trustee's "initial bur-

den … is simply to show that a sale free of the interests of the debtor's co-owners will produce a benefit to the estate." *Id.* "Once that burden is met, the defendants must come forward with evidence of detriment." *Id.* "If the Defendant then shows that such a sale would produce a detriment to him, the Trustee must show that the benefit to the estate is greater than the detriment to the Defendant." *Gray v. Burke (In re Coletta Bros. of North Quincy, Inc.)*, 172 B.R. 159, 165 (Bankr.D.Mass. 1994).

 To meet her initial burden of demonstrating that a sale of the Property free of Seye's interest would produce a benefit to the estate, the Trustee must show "that the estate's share of the net proceeds would exceed existing liens on the Debtor's interest in the property." *Id.* And to do that the Trustee must produce evidence of the value of both the Property and the liens on the Property as well as the costs to the estate of obtaining authority to sell the Property. As described below, the Trustee has not met her burden here.

With respect to value "[t]he trustee often satisfies this burden through stipulations as to the value of the property and the amount of existing liens, or through the testimony of appraisers or the parties themselves." *Jenkins*, 347 B.R. at 86. *See also Durand*, 2010 WL 3834587, at *12 ("[T]he Bankruptcy Court based its determination [to approve the sale free of the co-owner's interest] on the only evidence in the record as to the [value of] the property, an appraisal stating that it was valued at $361,500." (internal quotation marks omitted)); *Nathan v. Barbera (In re Barbera)*, 1996 WL 446821, at *3 (Bankr. E.D.Mich. Aug. 5, 1996) ("The Trustee called an appraiser who presented evidence as to the current value of the properties … as a justification for his request

to sell the entire properties, including Mrs. Barbera's interests, under section 363(h) of the Bankruptcy Code. The Defendants did not dispute the appraiser's evidence."). By contrast, here the Trustee relies on the value of the Property set forth in, and the liens identified on, the Debtor's schedules of assets and liabilities ("Schedules"). *See* Mot. at 18 ("The Debtor's Schedules value the Property at $161,000.00. The Property is subject to a purported mortgage of approximately $141,675.00, half of which can be avoided, preserved, and recovered for the estate. Therefore, the sale of the entire Property would yield a significant dividend for the estate, which outweighs any detriment resulting to Seye."). Although under appropriate circumstances a debtor's schedules can be properly viewed as admissions of the debtor, they generally are not considered admissions of a non-debtor party. *See Am. Express Bank v. Askenaizer (In re Plourde),* 418 B.R. 495, 505 n. 13 (1st Cir. BAP 2009) ("Generally, a bankruptcy court may properly consider a debtor's petition, schedules and statement of affairs as evidentiary admissions made by the debtor.... However, when the objecting party is the trustee, the bankruptcy schedules are not admissible as an admission against the trustee."). And although the value of property set forth on a debtor's schedules could be sufficient evidence of value where the schedules are admitted into evidence without objection, *see Jenkins,* 347 B.R. at 87, or where there is no opposition to the trustee's motion for summary judgment, *see DeRee,* 403 B.R. at 523, Seye has opposed the Motion. Although Seye appears to assume that the value of the Property is the one set forth in the Schedules, he does so only for the sake of argument. *See* Seye Resp. at 5 ("[A]ssuming for the sake of argument that the Debtor's interest is one half and also assuming that the property could sell for $161,000, the estate would receive $80,500."). Under these cir-

cumstances, the Court may not rely on the Schedules for the purposes of granting summary judgment.

Moreover, in order to carry her initial burden under § 363(h)(3) of showing that the estate's share of the net proceeds *would exceed existing liens on the Debtor's interest in the property,* the Trustee must present evidence regarding other liens on the Property, if any. The Trustee has alleged in her Motion the amount of the Mortgage lien, but has not made any representations in her Affidavit that there currently are no other liens on the Property, such as tax liens, judgment liens or junior mortgages. For this additional reason, the Trustee has failed to carry her burden of proof under § 363(h)(3). *See Jenkins,* 347 B.R. at 87 & n. 6 ("Contributing to the insufficiency of the proofs [regarding the benefit to the estate] is the dearth of evidence concerning the existence ... of any liens or encumbrances on the Property.... [T]here is virtually no testimony or other evidence to show that there are no mortgages, real estate tax liens, or other encumbrances on the Property *at present.* Again, the entry on Schedule A, listing the value of Debtor's interest in the Property as $70,000 with corresponding 'Amount of Secured Claim' shown as '0.00,' has little or no probative value in this case. Accordingly, the court finds that the Chapter 7 Trustee has failed to establish a right to sell the entire Property pursuant to § 363(h) of the Bankruptcy Code."). Similarly, in order to carry her initial burden under § 363(h)(3) of showing that the estate's share *of the net proceeds* would exceed existing liens on the Debtor's interest in the property, the Trustee must present evidence of the costs of sale. *See Coletta Bros.,* 172 B.R. at 165 (denying summary judgment on the trustee's request under § 363(h) where there was no evidence of the value of the property or the costs of sale). Here, the Trustee

has submitted no evidence of the costs to the estate of selling the Property free and clear of Seye's interest, nor has she submitted any evidence of the costs of pursuing this litigation to sell the Property free of Seye's interest—costs that will reduce the proceeds that ultimately are available to be distributed to unsecured creditors.

Even if the Court were to find that the Trustee had carried her initial burden, the Court would not grant the Trustee's request for summary judgment to sell the Property free and clear of Seye's interest at this stage of the proceedings. "Under subsection (h)(3), after the trustee has made his prima facie case establishing that the estate would benefit from the sale of the residence, the burden shifts to the defendant to show . . . a detriment to him." *Durand*, 2010 WL 3834587, at *12. "Detriment has been defined as economic hardship, as well as any loss, harm, injury or prejudice resulting from the involuntary displacement." *DeRee*, 403 B.R. at 523 (internal quotation marks omitted).

Seye alleges several bases for a finding of detriment here. In response to the Trustee's argument that there is no detriment to him because "[u]pon a sale of the Property, Seye is free to purchase another home or to make an offer to the Trustee to purchase the Debtor's interest in the Property," Mot. at 17–18,[20] Seye contends that it would be impossible for him to purchase the Debtor's interest. *See* Seye Resp. at 5 ("In order to protect his personal residence, Seye would have to find additional financing for $80,500. That would make the total indebtedness on the Property $219,094.02, or 136% of the current value. It is highly improbable that Seye will be able to secure a loan, with so much of it being unsecured, and would not be able to purchase the Debtor's interest, contrary to the assertion's [sic] of the Trustee."). Other courts have found such arguments to be persuasive. *See Gauthreaux*, 206 B.R. at 506 ("[T]he detriment to [the] Defendant . . . would be severe. Despite his equity in the property, he cannot obtain financing to enable him to [purchase the debtor's interest in the property], and would suffer hardship in being displaced. . . . [T]here is no assurance that what he nets would be enough to purchase a new home because he has too much debt to qualify for the substantial new mortgage loan that he would require.").

Seye also contends that detriment to him would arise from his having made all the monthly payments and having paid for all of the maintenance and upkeep on the Property, costs that he would not completely recoup even if he were to receive one-half of the sale proceeds.[21] *See* Seye Resp. at 5–6 ("Seye would have lost $11,202.99 in equity on the property and

---

20. *See* 11 U.S.C. § 363(i) ("Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.").

21. Under § 363(j) of the Bankruptcy Code, "[a]fter a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate." 11 U.S.C. § 363(j). It is unlikely, however, that Seye would ultimately be able to retain one-half of the sale proceeds. He is an obligor on the Note secured by the Mortgage, *see* Central Resp. Ex. A–5 and, upon the sale of the Property, Central "may require immediate payment in full of all sums secured by this [Mortgage]." Mortgage at 11.

would have lost his personal residence for which he paid $69,256.60 in just principal and interest alone (on the Note). All told, Seye would be harmed a total of $138,553.61 without even figuring in all of Seye's costs."). Again, other courts have found such arguments to be persuasive on the issue of detriment to the co-owner. *See Lovald v. Tennyson (In re Wolk)*, 451 B.R. 468, 473 (8th Cir. BAP 2011) ("[T]here was substantial evidence of detriment to the co-owner if the court allowed the sale of the property. Such evidence included ... the fact that all the equity in the home had been contributed by the co-owner, not the debtor.").[22] *See also Cmty. Nat'l Bank & Trust Co. v. Persky (In re Persky)*, 893 F.2d 15, 21 (2d Cir.1989) ("In weighing detriment to the non-debtor ... a number of variables must be considered[,] [including] ... [the] respective contributions to the purchase price of the home [and] prospects for acquiring a new home....").

The Trustee's response to all of this is that "[a]ny detriment to Seye is the unfortunate result of the Debtor filing bankruptcy while owning a one-half interest in an avoidable mortgage" and that "[t]he detriment results from such avoidance and not from the Trustee's sale of the property." Reply at 17. This argument is unpersuasive. Although the Trustee would not be seeking to sell the Property if she could not avoid the Mortgage, the detriment to Seye, if any, would arise from the sale.

Finally, it bears noting that Seye has submitted only argument, not evidence (such as an affidavit), on the detriment issue. Accordingly, if the Trustee had carried her initial burden, Seye could have lost on summary judgment. *See DeRee*, 403 B.R. at 523 n. 6 ("In the face of the Trustee's affidavit, a party cannot rely on pleadings, but must put forth evidence."). True, "[i]f a party fails to properly support an assertion of fact ... the [C]ourt may ... give an opportunity to properly support the fact," Fed.R.Civ.P. 56(e)(1), but the Court also would have had the authority to grant summary judgment in favor of the Trustee. *See* Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact ... the [C]ourt may ... grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it....").

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** the Motion in part and **DENIES** it in part. The Court **GRANTS** summary judgment in favor of the Trustee on her request in Count Two of the Complaint for avoidance of the Mortgage under § 544(a)(3) and on Count Four of the Complaint for preservation of the lien represented by the Mortgage for the benefit of the Debtor's estate pursuant to § 551. The Court **DENIES**, on the basis of mootness, summary judgment on Count One of the Complaint (seeking a declaratory judgment that the Debtor's one-half interest in

---

22. Seye also relies on his allegedly disproportionate contributions to the purchase and maintenance of the Property in support of his argument that the Debtor's interest in the Property—and the interest that the Trustee ultimately will have the authority to sell—"is very minimal if non-existent." Seye Resp. at 5. In response, the Trustee contends that "[a]s of the Petition Date, neither Seye nor the Debtor had initiated any state law action to partition the property" and that "[t]herefore ... the Debtor held a one-half legal interest in the Property when he filed his bankruptcy, and Seye cannot now seek to divest the bankruptcy estate of that interest." Reply at 16. In light of the other grounds for denying the Trustee's request for summary judgment on her § 363(h) claim, the Court need not reach this issue at this time.

the Property is unencumbered by the Mortgage) and Count Three of the Complaint (seeking avoidance of the Mortgage under § 547) and dismisses both counts. Summary judgment on the Trustee's request for recovery in Count Five (a claim for recovery from Central under § 550) is **DENIED** without prejudice to the Trustee renewing the request in the event that she is unable to sell the Property. Given the state of the record on the issue of whether the benefit to the Debtor's estate of a sale of the Property free of the interest of Seye outweighs any detriment to Seye, the Court **DENIES,** without prejudice, summary judgment on the Trustee's request in Count Six of the Complaint to sell Seye's interest in the Property.

In accordance with this memorandum opinion, the Court will enter a separate judgment in favor of the Trustee on Count Two and Count Four and will deny summary judgment on the remaining counts. A status conference on the remaining counts will be scheduled by separate order of the Court.

**IT IS SO ORDERED.**